Kimball *v.* Donald.

KIMBALL, *vs.* DONALD & OTHERS, Appellants, and BENOIST & ANOTHER, Respondents.

1. A bill of exchange drawn by a merchant upon his factor cannot, before acceptance, take effect as an equitable assignment of the fund, so as to defeat attaching creditors, although there may be a direction at the foot of the bill to charge to a particular account, and although the drawee may have promised to apply any balance in his hands belonging to the drawer, in payment of the bill.

*Appeal from St. Louis Court of Common Pleas.*

This was a petition in the nature of a bill of interpleader, filed by Kimball, to compel the defendants to litigate among themselves their respective claims to a fund in his hands, as the factor of Stone & Walworth, of New Orleans. The defendants Donald and others claimed as attaching creditors of Stone & Walworth, the plaintiff having been summoned as garnishee in suits brought by them. The defendants Benoist & Co. claimed under a bill of exchange drawn in their favor by Stone & Walworth upon Kimball, prior to the attachments, which, as they contended, amounted to an equitable assignment of the fund. The cause was tried by the court without a jury, and substantially the following facts found:

Stone & Walworth were partners in business in New Orleans, and Kimball was their factor in St. Louis. They were in the habit of making consignments to him, and drawing bills upon him, which he accepted and paid. On the 5th of May, they shipped to him fifty-six tierces of rice on the steamboat John Simonds, and ten hogsheads of sugar on the steamboat Charles

Kimball *v.* Donald.

Belcher, there being then an unadjusted balance due from him on account of previous consignments. On the 13th of May, they drew upon him a bill of exchange, of which the following is a duplicate :

" Exchange for $2500.

" New Orleans, May 13th, 1853.

" Twenty days after sight of this second of exchange (first unpaid,) pay to the order of L. A. Benoist & Co., twenty-five hundred dollars, value received, *and charge the same to account sugar, Belcher, rice, Simonds, and account sales.*

" STONE & WALWORTH.

" To Mr. E. B. Kimball, St. Louis."

On the 14th of May, Stone & Walworth notified Kimball by telegraph of the drawing of the bill, and requested him to pay it to Benoist & Co.

On the same day, Benoist & Co., having been notified by telegraph by their firm in New Orleans of the drawing of the bill, called upon Kimball, who then *promised to pay to them on the bill whatever amount might be found in his hands due to Stone & Walworth.* Subsequently, Kimball was summoned as garnishee in the attachment suits brought by the other defendants, and when the bill reached St. Louis, he refused to accept it.

Upon these facts, the Court of Common Pleas awarded the fund to Benoist & Co., and from this judgment, the attaching creditors appealed.

*Shepley* and *Kasson,* for appellants. 1. The bill of exchange did not operate as an assignment of any funds of the drawers in the hands of Kimball. (3 Sandf. S. C. R. 257. 1 Id. 416. 3 Comstock, 243. 1 Curtis U. S. R. 133. *Luff v. Pope,* 5 Hill (N. Y.) 413, 417. Same case on appeal, 7 Hill. 2 Am. Lead. Cases, (H. & W.'s notes,) ed. 1852, p. 141. 1 Seld. (N. Y.) 525. 2 Id. 412. 15 La. Rep. 255. 3 Kent's Com. 76. Story on Bills, §46, §47.) 2. The verbal promise of Kimball to Benoist & Co. cannot defeat the right of the attaching creditors to recover. It was not binding as

an acceptance of the bill, which must be in writing, nor as an original undertaking, because it is an undertaking to pay the debt of another and without consideration.

C. C. *Whittelsey*, for respondents. 1. Benoist & Co. had a direct action against Kimball on his promise to pay them whatever balance might be in his hands. (Chitty on Bills, 8, 9, 350, 351, *n*, *z* and *a*, 14 East, 598, *n*. *Curtis* v. *Norris*, 8 Pick. 280, 282. 12 Mass. 206, 211. 5 Peters, 580. 1 Wash. C. C. R. 424. 10 Mo. Rep. 525–38. Chitty on Contracts, 45. 12 Mo. Rep. 430–33. 5 Peters, 580.) 2. Benoist & Co. are entitled to the fund in preference to the attaching creditors, as being the assignees of the debt due by Kimball to Stone & Walworth. (Chitty on Bills, 9 and 8, *n.* 1 and 2. *Cutter* v. *Perkins*, 12 Mass. 206, 211. *Correr* v. *Craig*, 1 Wash. C. C. R. 424. *Stephens* v. *Stephens*, 1 Ashmead, 190. 17 Mass. 327. 11 Mass. 385. 2 Jones, 167. 4 Dallas, 379. Searg. on Attachment, 80–84. Cushing's Trustee Process, 171. Drake on Attachment, §498, 501, 510–13, 611, 615, 617, 621. 20 Pick. 132. 3 Swanst. 392. 4 Mylne & Craig, 690. 21 Eng. Law & Eq. Rep. 566. 15 Eng. Law & Eq. 27. 5 Wheat. 277. 1 Peters, 264, 288. 3 Binney, 394.)

LEONARD, Judge, delivered the opinion of the court.

This is a bill of exchange, and not a mere order to pay over a particular fund; and the direction at the foot of the bill, to charge to the particular account there indicated, does not change the character of the instrument, (Story on Bills, §66;) and we *think that*, after being refused acceptance, it cannot take effect as an equitable assignment of the fund, even connected as it is with an express promise on the part of the drawee to pay whatever balance may be found in his hands.

It is true that any thing amounting to a present transfer of a specific fund for value is a valid assignment in equity, which changes the property as against the assignor, and cuts off subsequent attaching creditors. No form is required; it is suffi-

cient that the transaction is, in the contemplation of the parties, a present sale of the subject matter assigned, vesting a present interest in the assignee, and not resting merely in agreement to be executed thereafter. In a word, any thing that shows an intention on the one side to make a present irrevocable transfer of the fund, and from which an assent to receive it may be inferred on the other, will operate in equity as an assignment, if supported by a sufficient consideration.

Upon this principle, courts allow an order payable out of a particular fund belonging to the drawer, and which has been delivered to the payee for value, to take effect as a present transfer of the debt; and Lord Chancellor Truro, in a recent case, 1852, (*Rodeck* v. *Gandell*, 15 Eng. Law and Eq. Rep. 30,) stated it as the result of all the cases that "an agreement between a debtor and a creditor that the debt owing should be paid out of a specific fund coming to the debtor, or an order given by a debtor to his creditor, upon a person owing money or holding funds belonging to the giver of the order, directing such person to pay such funds to the creditor, will create a valid, equitable charge upon such fund; in other words, will operate as an equitable assignment of the debt or fund to which the order refers."

This construction of such transactions generally executes the real intention of the parties, and is adopted for that reason, and therefore, if there be any thing from which a different intention ought to be inferred, as where the fund is to pass at a future day, the matter resting for the time being in agreement, (*Rogers* v. *Hosack's Ex'r*, 18 Wend. 334, and *Hoyt* v. *Story*, 3 Barb. Sup. Ct. Rep. 265,) or where the party retains the subject under his own control, by giving the order not to the assignee, but to his own agent, (*Rodeck* v. *Gandell*, 15 Eng. Law and Eq. Rep. 30,) the transaction is not allowed to have the effect of a present transfer. And so we think, in the present case, we cannot give to this transaction this effect, without defeating, in all probability, the real intention of these parties, and adopting a rule of decision that would not only have

that effect in a majority of the cases to which it would be applicable, but also of introducing into commercial transactions of this character great confusion.

We are reminded that a bill of exchange is the transfer of a debt due to the drawer from the drawee, and so it undoubtedly is, as between drawer and drawee, when the latter accepts ; but what is proposed here is, to make a bill that the drawee refuses to accept operate as a transfer of the fund, without any reference to the intentions of the drawer, under the circumstances that have occurred. The object of drawing a bill is to convert a debt, in theory supposed to be due from the drawee to the drawer, into a transferable chattel that may pass from one to another by endorsement or delivery, and this object is consummated by the acceptance, which binds the acceptor to whoever becomes the holder, to pay as the original debtor, absolutely and without any reference to the state of the account between himself and the drawer, leaving the latter still liable under his original conditional obligation to pay in default of payment of the primary debtor. These are the engagements created between the parties, (drawer and drawee,) and when acceptance is refused, the object the parties had in view being defeated, the only obligation upon the bill is against the drawer, who is remitted to his original rights in respect to the fund in the hands of his supposed debtor, and liable to pay according to his original undertaking. No one supposes that it was the intention of the parties, at the time this bill was drawn, that, if it could not take effect as a bill, on account of the refusal of the drawee to accept, that then it should operate as an equitable assignment of whatever funds the drawee might have in his hands belonging to the drawer. That event was already provided for by the drawer's undertaking to pay himself upon such refusal. What authority, then, have we, under these circumstances, to put into the transaction a stipulation which the parties never thought of, and would have rejected at once, had it been suggested to them, and then give effect to the transaction as an equitable assignment, in order to carry out this supposed intention. Looking

to the probable intention of parties, and to the interest of business, we cannot but think such a decision would be very mischievous in its practical operation, not only defeating the real intention of the parties in a majority of the cases to which it would be applied, but also greatly complicating the business affairs of men.

This seems, too, to be the view taken of this question in the most commercial state in the Union, the decision of whose tribunals, in questions of this character, must certainly command our respect, and when approved by our own reason, may be very safely followed as guides in determining commercial questions ; and we refer to the following cases in the New York courts, where the doctrine is expressly declared and applied, that a bill of exchange does not operate as a transfer of the fund, so as to protect it from third parties claiming subsequently from the drawer. (*Pope* v. *Luff*, 5 Hill, 417, and 7 Hill, 578. *Cowperthwaite* v. *Sheffield*, 3 Comst. 243. *Winter* v. *Drury*, 1 Selden's Rep. 525.)

The same doctrine seems to have been acted upon in *Wilson and others* v. *Lorard and others*, (15 La. Rep. 255,) which, although decided under a different system of law from our own, may yet be referred to upon a commercial question, (a matter rather of general than of local law,) at least to show how this question is dealt with practically in a highly commercial community.

It is further to be remarked that the case of *Corser* v. *Craig*, (1 Wash. Cir. Ct. Rep. 424,) to which we have been referred as a conflicting authority, (even if it must be so understood,) is but a *nisi prius* judgment, made in the hurry of a circuit trial, and many years ago, when the law upon the subject was certainly not as well settled as it is at present ; and highly respectable as the judge certainly was who delivered the opinion, yet the ground of it failing to satisfy our judgments, and the case itself being of no obligatory authority upon us, we cannot allow it to control our decision.

The result is, that the payees of the bill acquired, under the

circumstances of the present case, no specific lien upon the fund in the hands of the drawee, so as to cut out subsequently attaching creditors, and the judgment must therefore be reversed, and a judgment entered here, distributing the fund among these creditors according to the priorities of their attachments; and the other judges concurring, it is ordered accordingly.

Note.—A petition for a re-hearing of the above cause was overruled. The point relied upon was, that the telegraphic order and the promise to pay to Benoist & Co. gave the latter a direct action at law against Kimball for whatever sum might be in his hands, the bill of exchange cutting no figure in the transaction, except as showing a good consideration for the promise.