————o————

WM. BURNETT, Plaintiff in Error, *vs.* JOHN J. CRANDALL, *et al.*, Defendants in Error.

1. *Action—Assignment of part of claim—Recovery, rule as to.*—Where a claimant or creditor assigns a portion of his claim or debt without the consent of the party liable therefor, the assignee cannot recover on the portion so assigned. And the principle is of force in equity as well as law. And where it is at the time unliquidated and in litigation, the original claimant may then effect a compromise of the entire claim.

*Error to Jackson Circuit Court.*

*Clark & Thompson*, for Plaintiff in Error.

I. The assignment of part of a chose in action, without the consent of the debtor, is invalid and transfers to the assignee no interest in the debt. (Mandeville vs. Welsh, 5 Wheat. 277 ; Tripp vs. Brownell, 12 Cush. 381, 382 ; Sone vs. Fairfield, 13 Mo. 300.)

II. Such assignment is equally invalid in law and in equity. (Gibson vs. Finley, 4 Md. ch. 75 ; Tripp vs. Brownell, 12 Cush. 381, 382.)

*S. P. Twiss*, for Defendants in Error.

. I. The payment of a liquidated and ascertained debt is no payment or satisfaction of the whole, even though it be received and receipted for as payment in full. . (Wood vs. Wallace, 34 Ind. 226 ; Riley vs. Kershaw, 52 Mo. 224 ; Harriman vs. Harriman, 12 Gray, 341 ; Bailey vs. Day, 26 Me. 88 ; Perkins vs. Lockwood, 100 Mass. 249 ; Vanhouten vs. Reiley, 14 Miss. 440 ; S. C. 6 Smedes & M. 440 ; 2 Chit. Cont. [11th Ed.] 1101.)

II. The assignment by Geis to Crandall of an undivided one-half of the judgment with notice thereof, to Burnett, is an equitable assignment, and created a trust in favor of Crandall, which was an equitable lien upon the judgment, which the courts of equity will enforce. (Smith vs. Everett, 4 Brown's Chan. 64 ; Sett vs. Morris, 4 Simon, 607 ; Watson vs. Duke of Wellington, 1 Russell & Mylne, 602, 605 ; 9 Cow. 34 ; 9 Cow. 747 ; 5 Cow. 376 ; Kendall vs. United States, 7 Wall. 113 ; Sto. Eq. Jurisp., § 1044 and cases there cited.)

SHERWOOD, Judge, delivered the opinion of the court.

The record discloses : that in January, 1871, a judgment by default for the sum of $500 was rendered in the Kansas City court of common pleas, in favor of one John Geis, and against Wm. Burnett, in an action for an assault and battery. On the day of its rendition, Geis, by an instrument to that effect, assigned one-half of the judgment to the defendant, Crandall, who was his attorney in the action referred to. After vainly endeavoring to set the judgment thus obtained aside, and of which it seems he

had no knowledge until seeing an account of such recovery in the city papers, Burnett gave bond and took an appeal to the Supreme Court.

In the June following, Geis made a formal assignment on the record to Crandall, in accordance with the terms contained in the paper before mentioned. In the next succeeding July, Geis, for the sum of seventy dollars, "and for other good and valuable considerations," as recited in a paper to that effect signed by him, "settled with William Burnett the judgment in the above entitled cause (referring to the judgment already mentioned), and accepted and received the above sum in full satisfaction and discharge of the same." The paper in question also authorized the judgment to be "canceled and dismissed at the cost of said William Burnett." At the time of this adjustment Geis received from Burnett a writing, which, after reciting the settlement made by them, contains in addition thereto, this clause: "Now this is to certify that I agree to protect and to indemnify and save harmless the said John Geis against all claims for damages which J. J. Crandall, the attorney of said Geis, may have against him on account of said settlement of said judgment."

Both the papers above mentioned contained, in their respective captions, a recital of the pendency of the appeal in the Supreme Court. Notwithstanding his agreement and receipt in full satisfaction, Geis, (at whose instigation does not clearly appear) presented a transcript in the Supreme Court, and had the judgment affirmed. This occurred in July, 1872. Shortly thereafter, Crandall caused an execution to issue on the judgment thus affirmed, and made an indorsement on the writ as attorney and assignee, requiring the sheriff to collect one-half the judgment for his use, and stating that the residue had been remitted and satisfied.

Thereupon Burnett filed his petition making Geis and the sheriff, Gray, defendants. Crandall was subsequently added as party defendant. Geis made no answer. A temporary injunction was granted, but on final hearing, the restraining order was so far modified as to allow the collection of the amount claimed by

Crandall. In consequence of this ruling, the plaintiff has appealed.

The case at bar presents but two salient questions :

1st. Whether it is permissible for a claimant or creditor to assign a portion of his claim or debt, without the consent of the person against whom the claim is made or the debt asserted?

2d. If the transfer of a moiety occur without such assent, whether it is competent for the original claimant to effect a compromise of the whole claim?

Relative to the first point :

## I.

It is a familiar doctrine at law that a portion of a debt, claim or judgment is incapable of assignment in the absence of the debtor's consent. This was so ruled by this court in Love vs. Fairfield (13 Mo. 300), under circumstances very similar to those now before us. It is true that was a case which arose on a motion filed by the attorneys of the plaintiff, who were also assignees of a portion of the judgment, to set aside the entry of satisfaction made on the execution under the plaintiff's instructions, and to award another execution ; but it is difficult to see why the same principle should not dominate even where equitable interposition is invoked. For it must, it would seem, be obvious that the mischief incident to these partial assignments, these unauthorized divisions of a single debt into numerous and disconnected fractions, would be as great, and therefore the prohibitory reasons of equal cogency in a court of equity as in a court of law. This, for the most part, was the view taken in the case of Mandeville vs. Welch (5 Wheat, 277), on which the decision in our own court already referred to was chiefly based. The doctrine here asserted has also found direct recognition in courts possessing chancery powers. (Colyer vs. Fallon, 1 Turn. & Russ. 470, 475, 476 ; Gibson vs. Finley, 4 Md. Chy. 75.)

The learned judge and accomplished author who delivered the opinion in Mandeville vs. Welch, supra, would seem to have expressed a somewhat different view in his admirable work on Equity Jurisprudence (2 Sto. Eq. Jur., § 1044) ; but it will perhaps be found, on close examination of the authorities cited in

the margin in support of the text, that they scarcely give sanction, in all its broadness, to the idea that a creditor, in ruthless disregard of the wishes or interests of his debtor, may divide and assign the debt into as numerous portions *as there are dollars in the indebtedness,* and yet successfully appeal to *a court of conscience* to countenance and enforce such oppressive and inequitable transfers. For if you once grant the premise that a creditor, without the consent of. his debtor, may split and assign the debt into *two* portions, you thereby pave the way for the inevitable corollary that no bounds can be fixed or limits assigned, in this regard, to the *creditor's gracious option.* The mind of every just man might well hesitate before adhering to such a doctrine, however sustained by precedent or fortified by authority. But as before intimated, it is not thought to be thus sustained by the authorities to which reference has been made, as cited in a note appended to the text. The case of Lett vs. Morris (4 Sim. V. C. 607) was more in the nature of *an appropriation out of a particular fund than the assignment of a portion of a debt.* In addition to that, Morris, on whom the order was drawn by his builder, Greenaway, received, without objection, a duplicate of this order on the day it was drawn, and subsequently paid one of the instalments ($80), to Greenaway, who immediately paid it over to Lett, who had been previously notified to be present by a letter from Bray, the architect of Morris. And then after that the second instalment was paid by Morris himself, directly to Lett's clerk. It is true that Morris, in his answer, denied Bray's authority to write the letter, and denied that both the instalments were paid to Greenaway, but the case says:

" *It appeared by the evidence that those two sums were paid as before stated.*" Now it would have been a palpable fraud on Lett to have allowed Morris to seemingly approve the order on which he knew the former relied as security for the lumber he was furnishing, and then in the end repudiate the appropriation to which he had impliedly, if not expressly, assented, and on the faith of which the material was furnished.

Most clearly he was equitably estopped from urging the defense that he had not consented to the appropriation.

In Smith vs. Everett (4 Bro. Ch. 64) the order of Maton, who was a government contractor, was held to constitute a specific lien on, and appropriation of the particular fund on which it was drawn, in favor of certain sub-contractors, because they had contracted to furnish, and did furnish, supplies to certain encampments on the faith of, and with reference to, an articled stipulation whereby Everett, to whom the order was directed, and who was one of the sureties of Maton for the performance of his con-. tract to government, was to have the disbursement of all the moneys paid by government on the contract. And so Lord Commissioner Eyre well remarks : " As Everett was Maton's security, it was provided that the money should be paid to the sub-contractors by him, and he had the bills in order to draw upon government. There could not be a stronger appropriation of the fund than this."

·And Lord Commissioner Ashhurst distinctly says : " This is not a *debt*, but a standing authority to Everett to give the other parties (meaning the sub-contractors ) the same remedy."

So that it will be readily observed that not only was there the element of equitable estoppel in that case also, but Everett had *previously* stipulated to do the very thing which Maton's order requested him to do.

The case of Watson vs. The Duke of Wellington, simply decides that, to create an equitable assignment, there must be an engagement on the part of the *debtor* to pay out of a particular fund.

The case of Morton vs. Naylor (1 Hill [N. Y.] 583), was one at law, and merely establishes, that when a landlord draws on his tenant for a certain sum and the latter accepts, it is not within the power of the former to revoke the order so given.

I have thus briefly reviewed the causes on which the doctrine laid down in the text is supposed to rest, but find none of them to go to the extent there claimed. And since the evidence shows in the most pronounced manner that Burnett never consented to the assignment made by Geis, it must follow, if the foregoing reasoning be correct, that whatever equities may have arisen or rights been created, as between Geis and Crandall, such rights

and equities cannot be regarded as having any obligatory force on Burnett. Nor can the agreement of the latter, made when effecting the compromise with Geis, be tortured into such assent. He, well knowing that no consent on his part had been given to the assignment of half of the judgment, might well conclude that he ran no risk in agreeing to indemnify Geis for making a compromise, which he had the perfect right to effect as owner of that judgment. And the intention of Burnett in this respect is made more pointedly apparent when it is remembered that the cotemporaneous agreement of Geis recites that the judgment is " to be *canceled and dismissed* " *at the cost of Burnett*. Surely no reasonable inference of intended recognition of the rights of a partial assignee in a judgment is to be drawn from a compromise which contemplates the practical obliteration of such judgment.

## II.

· This brings us to the second point proposed for examination. And in relation to this we regard the case of Kendall vs. United States (7 Wal. 113), as conclusive authority on that point ; for Mr. Justice Miller, when speaking of a claim of certain attorneys against the United States on the ground of a claim of the Cherokee Indians of which the attorneys were to receive directly from the United States 5 per cent. on all sums that might be collected on the claim, and where the claim was compromised by treaty, says : " It is supposed that the doctrine of an equitable assignment of a debt or fund due from one person to another by the order of the creditor to pay it to a third party when brought to the notice of the debtor, is a sufficient foundation for the claim.

\*      \*      \*      \*      \*      \*      \*      \*

The debt or fund as to which such an equitable assignment can be made, must be some recognized or definite fund or debt in the hands of a person who admits the obligation to pay the assignor ; or at least, it must be some liquidated demand capable of being enforced in a court of justice. We apprehend that the doctrine has never been held that a claim of no fixed amount, nor time, or mode of payment—a claim which has never received the assent of the person against whom it is asserted, and which remains to be settled by negotiation or suit at law, can be so assigned as to

give the assignee an equitable right to prevent the original parties from compromising or adjusting the claim on any terms that may suit them."

Here " the obligation to pay the assignor" had never been admitted, nor was the judgment, at the' time the compromise was effected, a " liquidated demand capable of being enforced in a court of justice," for the bond was given, appeal taken and cause pending in this court. What might have been the ultimate result of such appeal, it is impossible now to determine, and therefore the whole matter was manifestly one remaining to be settled "by *negotiation or suit at law.*" This shows very plainly that this case falls within the principle of the rule laid down by Mr. Justice Miller, and consequently fully authorizes and gives validity to the compromise which Geis, without Crandall's consent, effected. So that should it be urged that our conclusion as to the first point considered was incorrect, still our second conclusion, supported as it is by high authority, remains intact.

The result is, that the judgment must be reversed and the cause remanded, with directions to proceed in accordance with this opinion. All the other judges concur.