HENRY S. CHASE ET AL., Defendants in Error, v. Q. F. ALEXANDER, INTERPLEADER, Plaintiff in Error.

February 11, 1879.

1. In accordance with his general custom with reference to Tennessee customers, C., a commission-merchant in New Orleans, sent the proceeds of a sale made for A. to a bank in St. Louis, and forwarded a draft therefor to A. The balance remaining in the bank to C.'s credit was attached by one of his general creditors. A. claimed so much of this balance as would pay the draft, which was not received until after the attachment. *Held*, in an action on A.'s interplea, that, inasmuch as he did not allege that the net proceeds of the specific sale made for him, and for which the draft was given, were ever forwarded to the bank by C., or that they remained there at the time the draft was presented, a demurrer to the interplea was properly sustained.

2. The mere drawing and delivery to the payee of a bill of exchange does not, before acceptance, operate as an assignment *pro tanto* of the fund in the hands of the drawer.

ERROR to St. Louis Circuit Court.

*Affirmed.*

TIFFANY & KLEIN, for plaintiff in error: The fund was the direct proceeds of the claimant's property in the hands of his factor, and, as such, a trust-fund, the title to which cannot be diverted by the acts of plaintiff, defendant, or by process. — *Banning* v. *Blakely*, 27 La. An. 257; *Whitaker* v. *Chapman*, 3 Lans. 155; *Leniche* v. *Booth*, 47 Mo. 385; *Chapman* v. *Forsyth*, 2 How. 202. The title remained in claimant, and could not be divested, but he may pursue the proceeds, no matter what change takes place in the form. — *Benny* v. *Rhodes*, 18 Mo. 147; *Benny* v. *Pegram*, 18 Mo. 191; *Duguid* v. *Edwards*, 50 Barb. 288. And this title will prevail against an attaching creditor. — *Kelly* v. *Bowman*, 12 Pick. 383; *Merrill* v. *Bank*, 19 Pick. 32. The drawing and delivery of the order was an equitable assignment of the fund *pro rata* to those to whom it belonged. — Drake on Attach., sect. 527; *United States* v. *Vaughan*, 3 Binn. 394; *McEwen* v. *Johnson*, 7 Cal. 258;

*Hoyt* v. *Story*, 3 Barb. 262 ; *Edgell* v. *Tucker*, 40 Mo. 523 ; *Smith* v. *Sterritt*, 24 Mo. 260 ; Wag. Stats. 217, sect. 18 ; *Kimball* v. *Donald*, 20 Mo. 577.

SILAS B. JONES, for defendants in error : The mere drawing and delivery of a bill of exchange to the payee does not operate as an assignment to him of the funds of the drawer in the hands of the drawee before acceptance. — *Kimball* v. *Donald*, 20 Mo. 577 ; *Adams* v. *Darby*, 28 Mo. 162 ; *Ford* v. *Angelrodt*, 37 Mo. 50 ; *Bank* v. *Bogy*, 44 Mo. 13. The facts alleged in the interplea do not give plaintiff in error any right to the fund in this case.

BAKEWELL, J., delivered the opinion of the court.

Plaintiffs sued Chopin by attachment, and on the same day summoned the Commercial Bank of St. Louis as garnishee. The bank, in its answer to interrogatories, stated that Chopin was and had for several years been a depositor in the bank of defendant, and that there was $1,496.62 in its hands, " a balance of the moneys before that time deposited by said Chopin in said bank, which had been deposited by said Chopin subject to" his demand ; that prior to the garnishment said Chopin had drawn on the bank his drafts or bills of exchange, payable at sight, in favor of divers persons, as follows : —

| No. 9,315, dated Dec. 1, 1877, to Murray Phillips | $300 00 |
|---|---|
| " 9,386, " " 29, " " M. Donaldson | 271 89 |
| " 9,400, " " 31, " " M. L. Stally | 111 40 |
| " 9,416, " Jan. 1, 1878, " Thomas Hall | 74 11 |
| " 9,451, " Feb. 5, " " M. Donaldson | 164 78 |
| " 9,457, " " 9, " " Mrs. M. Buenam | 124 80 |
| " 9,462, " " 11, " " J. W. Brownell | 14 58 |
| " 9,464, " " 11, " " M. F. Dunklin | 32 10 |
| " 9,466, " " 11, " " Q. F. Alexander | 224 31 |
| " 9,470, " " 11, " " Mrs. C. Dickinson | 43 96 |
| " 9,473, " " 13, " " Gus. Warrington | 94 78 |

Total.....................................................$1,453 71

That these drafts or bills of exchange were, after the service of garnishment, presented for payment, which was declined on account of the garnishment; that these bills or drafts were held by the said parties in whose favor they were drawn, who each claimed that they operated as an assignment *pro tanto* for the amounts. A statement of the account between the bank and Chopin was filed with this answer, showing between two and three hundred entries of deposits and payments during December, 1877, and January and February, 1878; the aggregate deposited being $33,863.63. The credit entries are about thirty in number, and are usually for large round sums from $5,000 to $1,000 in amount.

The reply of the defendants in error denied the drawing of the drafts and their presentment to the bank, and that they were held by the persons in whose favor they were drawn; and denied that they operated as an assignment, and contested the validity. of the claim of every person against the fund.

At the request of the garnishee, it was allowed to pay the funds into court, and the claimants were directed to interplead. They entered their appearance, and a stipulation was filed that the claim of Alexander should be the only one as to which proceedings should be taken until that claim should be disposed of in this court.

Alexander, who is plaintiff in error here, filed his interplea, and the following is the substance of his claim as stated by him: Alexander is a resident of Tennessee, and Chopin for many years past has been and now is a commission-merchant in New Orleans. Alexander and the other claimants named in the answer of the garnishee have been in the habit of shipping their produce to Chopin for sale on their account, and receiving from him orders on the defendant, the Commercial Bank at St. Louis, for the net proceeds of sales. Chopin kept no other account with the Commercial Bank, but, by agreement with and for the accommoda-

tion of those selling their goods through him, many of whom were not within easy communication with New Orleans, or had business in St. Louis, and because money-orders on St. Louis were more available to them, Chopin from time to time drew his orders on the Commercial Bank at St. Louis, and deposited in that bank sufficient funds only to meet his orders. The funds so deposited were the proceeds of the sales made by Chopin for the present claimant and the other claimants, of their goods sold by him on commission. In accordance with the usual course of business, in January, 1878, the claimant shipped to Chopin four hundred and thirty-nine sacks of corn, which Chopin sold for claimant; and after deducting commissions and expenses, there remained a net balance of $352.31. Chopin then made out his account with claimant, and, after deducting the price of certain goods which the claimant had bought through Chopin, found a balance due claimant of $224, of the proceeds of corn. Chopin then forwarded to claimant the following order : —

"NEW ORLEANS, Feb. 11, 1878.

"Exch. for $224.31.

"At sight of this first of exchange (second unpaid), pay to the order of Q. F. Alexander, in current funds, two hundred and twenty-four 31-100 dollars, value received, and charge to account of

"Yours respectfully,

"OSCAR CHOPIN.

"To the Commercial Bank, St. Louis, Mo.

"No. 9,416."

This order was presented to the Commercial Bank on March 5, 1878, and payment refused, the Commercial Bank reporting that the plaintiff's garnishment had been served, and refusing to charge the fund in its hands. Immediately on receiving notice of this refusal, claimant served on the bank notice of his claim to the fund.

Defendants demurred on the ground that this interplea

did not set forth facts sufficient to show any right to the fund. The demurrer was sustained, and final judgment on the demurrer; from which Alexander appeals.

We think the demurrer was properly sustained. It nowhere appears from any thing stated in this interplea that Chopin ever deposited in the Commercial Bank the proceeds of the sale of this corn, or that any portion of the balance to the credit of Chopin in the bank was the proceeds of any sale made by Chopin for claimant, or that any part of that fund was money received by Chopin for this claimant.

There is no question here of the principal following and claiming his goods in the hands of the factor, or their proceeds if they have been sold and bartered. There is not only no allegation that the funds of claimant, the proceeds of this corn, ever went into the Commercial Bank, but there is no allegation that they remained there and were there at the time of the garnishment. Suppose that claimant would have a right to the proceeds of the sale of this corn if Chopin had deposited it with other funds exclusively the proceeds of similar transactions, and it had remained in the bank at the time of the garnishment (a matter which could only be ascertained by examining the accounts of Chopin with the bank, and ascertaining on what account each particular deposit, and draft paid or presented to the bank, in regard to this trust-fund was made), still it cannot be successfully contended that Alexander is entitled to any portion of this fund as a principal following his goods and reclaiming them from the possession of the factor, unless it appears, not only that the proceeds of the sale of this corn were deposited in this bank, but that they had not been withdrawn by Chopin to meet other indebtedness. But the pleader nowhere states either that the fund was ever placed there by Chopin, or that it remained there and was there when the claim was made.

In saying this, we leave the question untouched whether or not if a factor in New Orleans should keep a special de-

posit in St. Louis for the purpose of furnishing St. Louis exchange to his customers, and should deposit to that account nothing but the net proceeds of sales made for his customers, and draw against it only for the purpose of paying out the sums deposited to those for whom the sales were made, so that each deposit would have its corresponding draft, — whether in that case each factor might follow the proceeds, and recover from the fund the specific deposit made on his individual account. According to the doctrine of *Pennell* v. *Deffell*, 4 De G. M. & G. 372, cited by counsel for plaintiffs, it would seem that he could. But the question does not necessarily arise in this case. No such case is made by the pleadings.

Nor was the bill of exchange given by Chopin to Alexander an assignment *pro tanto* of the fund in controversy. That a check is such an assignment, even before presentment, is held in Illinois and Iowa. The contrary doctrine is maintained in New York, Pennsylvania, and Massachusetts. *Lunt* v. *Bank*, 49 Barb. 221; *Duncan* v. *Berlin*, 60 N. Y. 151; *Bullard* v. *Randall*, 1 Gray, 605; *Bank* v. *Gish*, 72 Pa. St. 13; 26 Iowa, 315; 80 Ill. 212. The drawer of a check certainly has a right to countermand it. An instrument drawn in duplicate, declared on its face to be exchange, and payable "at sight," is not what is understood in the commercial world by a bank-check. That the mere drawing and delivery to the payee of a bill of exchange does not, before acceptance, operate as an assignment of the fund in the hands of the drawee is well settled in Missouri. 20 Mo. 577; *Bank* v. *Bogy*, 44 Mo. 13.

We therefore think that the interplea of Alexander fails to disclose any special right to the fund in controversy, or to any part of it, above the other general creditors of Chopin, and especially against plaintiffs, and we think that the Circuit Court committed no error in sustaining the demurrer. The judgment of the Circuit Court ought therefore to be affirmed, and it is so ordered. All the judges concur.