THE MISSOURI PACIFIC RAILWAY COMPANY, Plaintiff,
    v. A. M. WRIGHT & COMPANY, Respondents, AND
    COUNCILMAN AND LUDDINGTON *et al.*, Appellants.

### Kansas City Court of Appeals, December 2, 1889.

1.  **Assignment:** ORDER FOR PART OF A FUND: GARNISHMENT.   An
    unaccepted order for a part of a fund does not operate as a legal or
    equitable transfer of so much of the fund as is therein called for,
    not as a lien on such fund and such order is wholly unavailing
    against a subsequent garnishment sued out by a creditor of the
    drawer, following *Rice v. Dudley*, 34 Mo. 383.

2.  ———: ACCEPTANCE OF ORDER. The subsequent bringing of a
    bill of interpleader against the drawee in such order, and subse-
    quent garnishing creditors of the drawer, will not of itself operate
    as an acceptance of such order.

3.  ———: ———. The case of *Johnson County v. Bryson*, 27 Mo.
    App. 351, distinguished, as presenting a question between two
    assignees, one of whom had given notice and the other had not,
    no question of garnishment appearing in the case.

*Appeal from the Buchanan Circuit Court.*—HON. J. P.
    GRUBB, Judge.

REVERSED AND REMANDED (*with directions*).

*M. A. Reed* and *Lancaster, Hall & Pike*, for the
appellant.

This question must be answered in the negative for
two reasons: (*a*) Because there can be no assignment,
either in law or in equity, of a portion of a debt without
the debtor's consent.   *Burnett v. Crandall*, 63 Mo. 410;
*Beardslee v. Morgner*, 73 Mo. 22; *Dickinson v. Coates*,
79 Mo. 250; *Snyder v. Railroad*, 86 Mo. 620; *Bank v.
Noonan*, 88 Mo. 372.   (*b*) Because the doctrine of an
equitable assignment of a debt or fund, due from one
person to another, by the order of the creditor to pay it

to a third party, when brought to the notice of the debtor, applies only to some recognized or definite fund or debt in the hands of a person who admits the obligation to pay the assignor, and never to a claim which has not received the consent of the person against whom it is asserted, and which remains to be settled by negotiation or suit at law. *Kendall v. United States*, 7 Wall. 113, 116; *Burnett v. Crandall*, 63 Mo. 416.

*Green & Burnes* and *James W. Boyd*, for the respondents.

(1) An order drawn upon a third party payable out of a particular fund specified, due or to become due from him to the drawer, operates upon notice as an equitable assignment *pro tanto* of the fund, without any acceptance of the order by the debtor, and the payee may, by action, compel payment of such part of such fund. *Brill v. Tuttle*, 81 N. Y. 454; *People v. Comptroller*, 77 N. Y. 45; *Ehrichs v. DeMill*, 75 N. Y. 370; *Canty v. Letterner*, 31 Minn. 239; *Bank v. Kimberland*, 16 W. Va. 555; *Kahnweiler v. Anderson*, 78 N. C. 133; *Kirtland v. Moore*, 40 N. J. Eq. 106; *Stanberry v. Smythe*, 13 Ohio St. [N. S.] 495. *Lapping v. Duffy*, 47 Ind. 51; *Whitney v. Cowan*, 55 Miss. 626; *Caldwell v. Hartupee*, 70 Penn. St. 74–79; *McWilliams v. Webb*, 32 Iowa, 517; *Bank v. McLoon*, 73 Me. 498–505. (2) No written instrument is required to constitute a valid assignment in such a case. Any order, writing, words or act, showing an intention of transferring or appropriating the fund or part thereof, in such case is sufficient. *Wiggins v. McDonald*, 18 Cal. 126; *McWilliams v. Webb*, 32 Iowa, 577; *Garnsey v. Gardner*, 49 Me. 167; *Spiker v. Nydegger*, 30 Md. 315; *Jordan v. Gillen*, 44 N. H. 424; *Noyes v. Brown*, 33 Vt. 431; *Shannon v. Hoboken*, 37 N. J. Eq. 123; *Patten v. Wilson*, 34 Penn. St. 299; *Johnson Co. v. Bryson*, 27 Mo. App. 341–348.

(3) But even if respondents should, for the sake of argument, concede that under no circumstances could a part of a debt be assigned even out of a particular fund specified, without the consent of the debtor, still the judgment and decree in this case is correct, legal and irreversible, according to all legal and equitable principles; for the following reasons: No person has the right to object to an assignment of a part of an ordinary debt or claim except the debtor himself. The rule of law, which prevents a creditor from splitting his demand, is meant for the protection of the debtor and for no other person. The debtor alone has the right to object to an assignment of part of the debt, on the ground that it is a partial assignment. The appellants in this case have no right to make any such objection. *Bank v. Noonan,* 88 Mo. 372, 377; *Johnson Co. v. Bryson,* 27 Mo. App. 341, 349, 350; *Bank v. McLoon,* 73 Maine, 498 (and cases cited); *Schools v. Heath,* 15 N. J. Eq. 22–30; *Whitney v. Cowan,* 55 Miss. 620; *Canty v. Letterner,* 31 Minn. 239; *Stanberry v. Smythe,* 13 Ohio St. 495. (4) When the plaintiff, Missouri Pacific Railroad Company, filed its bill of interpleader, paid the money into court, and was discharged, it waived its objection to an assignment by Christie to respondents of part of the debt owing by it. Appellants have no right to make any such objection. *Johnson Co. v. Bryson,* 27 Mo. App. 341, 349, 350; *Bank v. Noonan,* 88 Mo. 372; *Schools v. Heath,* 15 N. J. Eq. 22; *Whitney v. Cowan,* 55 Miss. 626; *Bank v. McLoon,* 73 Me. 498; *Bank v. Noonan,* 14 Mo. App. 243; *Beardslee v. Morgner,* 4 Mo. App. 139; *Cook v. Ins. Co.,* 8 How. Pr. 514; *Stanberry v. Smythe,* 13 Ohio St. 495; *Canty v. Letterner,* 31 Minn. 239.

Appellant in reply to respondent.

(1) Did said order constitute such an equitable assignment at the time of the service of the writs of

garnishment?   We still insist that under the well-settled rule of law in this state, said order did not constitute such an assignment, and for the reasons given in our original brief herein.   *Loomis v. Robinson,* 76 Mo. 488; *Turner v. Lord,* 92 Mo. 117; *Johnson Co. v. Bryson,* 27 Mo. App. 341–348; *Bank v. Bogg,* 44 Mo. 18.   Our position is that, under the rule recognized in this state, an order drawn on a fund, general or special, for a part only, is not of itself an assignment in law or in equity, and that it can never become an assignment until it is accepted by the drawee.   Drake on Attach [5 Ed.] sec. 611; *Bullard v. Randall,* 1 Gray, 605; *Duncan et al. v. Berlin,* 60 N. Y. 153; *Chase v. Alexander,* 6 Mo. App. 505.   See *Kimball v. Dewald,* 20 Mo. 577; 2 Wade on Attach., secs. 465 and 482, and cases cited.

SMITH, P. J.—C. C. Christie was for many years engaged in the grain and commission business in the city of St. Joseph, Missouri.   Christie had, as his correspondents in Chicago, A. M. Wright & Co.   At the particular time in his business career with which this suit is connected, Christie had a shipping contract with the Missouri Pacific Railway Company, providing for a considerable rebate on all the grain that should be shipped by Christie on the road.   Christie drew drafts on A. M. Wright & Co., on account of grain shipped by him to them, which were paid by the latter, until they had paid the sum of $1,819.92 in excess of the net amount realized by them for the sale of the grain shipped to them by Christie.   Christie claimed that the railroad company owed him about twenty-seven hundred dollars on account of said contract on rebates.   In order to pay Wright & Co., Christie gave them the following order:

"CHICAGO, November 29, 1884.

"*Mr. L. A. Emerson, G. F. A., Mo. P. R. R. Co., St. Louis.*

"DEAR SIR.—Please pay to A. M. Wright & Co., ($1,819.92) eighteen hundred and nineteen and ninety-two-hundredths dollars out of the amount due me on overcharge on freight, and oblige,

"Respectfully yours,

"C. C. CHRISTIE."

The order was not paid. The railroad company denied the contract providing for rebates. Afterwards, Christie brought suit in the Buchanan circuit court against the railroad company on said contract, claiming, as due him thereunder, about twenty-seven hundred dollars, and, in said suit, obtained judgment, on May 2, 1885, for the sum of twenty-six hundred and twenty-one and twelve-hundredths dollars ($2,621.12), which judgment, on appeal, was affirmed by the supreme court of the state.

After the rendition of the judgment in the circuit court, the various defendants in the present action, other than Wright & Co., having heretofore obtained judgments in various circuit courts of the state, had issued execution thereon, and caused the railroad company to be summoned as a garnishee. The garnishment proceedings were continued until after the affirmance by the supreme court of the judgment in favor of Christie, against the Missouri Pacific Railway Company. After the affirmance of said judgment, the railroad company instituted this proceeding of interpleader, setting up the facts as to the judgment, as to the garnishments, and as to the claim of Wright & Co., based on a formal assignment of the judgment made by Christie to them, on March 20, 1888, asking that the garnishees and said Wright & Co. be ordered to interplead for, and litigate their rights to the amount of said judgment.

The court made the order requested, and the parties accordingly interpleaded for said fund. Upon the trial, the facts appeared as above stated. The court held that the order given by Christie to Wright & Co., on November 29, 1884, constituted an equitable assignment of the fund to the extent of the sum named in the order, and that, therefore, Wright & Co. were to be paid first out of said fund, thus postponing the garnishees to Wright & Co.

The assignment of the judgment by Christie, to Wright & Co., was long subsequent to the levy of the garnishments. The defeated execution creditors appealed from the judgment and decree of the court directing that Wright & Co. were to be first paid out of the fund interpleaded for.

I. The question thus presented for our decision is, whether the order of Christie to Wright & Co., on the railway company, for $1,819.92, out of the amount claimed to be due him on rebates, was an equitable assignment of so much of said fund. The garnishment creditors contend that there can be no assignment, either in law or equity, of a portion of a debt without the consent of a debtor.

In the case of *Rice v. Dudley*, 34 Mo. 383, decided at last term, which is "on all fours" with this, we entered into rather an extended examination and review of the various decisions of the supreme court of this state, supposed to have any bearing upon the question then under consideration, and the conclusion reached by us, was that the order given by the creditor on the debtor, to pay the payee so many dollars "out of any money in his hands," being only for a part of the debt due the creditor, and not having been accepted by the debtor, did not transfer to the payee either a legal or equitable right against the creditor either to so much of the fund as the order called for, or give him a lien thereon. Our ruling in that case is in strict accord with

the doctrine established in this state by the decided cases cited in the opinion, and which we feel bound to follow in the present case.

When the order drawn by the debtor, in favor of a creditor, on the drawee, for the whole of a specific fund, the acceptance of the drawee is not necessary to the validity and lien of the assignment so made. An order calling for a fund in its entirety seems not to be within the operation of the rule which enjoins acceptance by the drawee. This qualification to the rule has for its foundation the opinion of Lord THURO in *Haddock v. Gandell*, 13 Eng. L. & E. 30. If the cases cited by the industrious counsel for the interpleaders, who were successful in the circuit court, announce the rule to be as stated by them, then these cases are not in harmony with a long line of decisions in this state.

The successful interpleaders however contend, that even if the rule is as we have decided it to be, and that it does not permit a creditor to split his debt into fractions, yet that since the rule is intended to be for the benefit of the debtor alone that the garnishment creditors have no right to invoke it against the assignment. We are not prepared to yield our unqualified assent to this statement limiting the application of the rule. Under the rule we are considering, an order drawn on a fund, general or special, for a part only is not of itself an assignment either in law or in equity, and it can never become an assignment until it is accepted by the drawee. If the drawee accept it, the order becomes an assignment, binding as such, and no one can object on the ground (waived by the drawer) that the order was for part only of the fund; until the drawee accepts the order, it is not an assignment to any one, the drawer can maintain an action on the debt, the drawee may compromise the debt with the drawer, and the drawer's creditors may attach it. *Bennett v. Crandall*, 63 Mo. 410.

In *Chase v. Alexander*, 6 Mo. App. 503, and *Rice v. Dudley*, *supra*, the garnishee was allowed to pay the funds into court, and the claimants were ordered to interplead, and yet in each of these cases the garnishing creditors prevailed over the payee in the order. In *Kimball v. Dewald*, 20 Mo. 577, the drawer subsequent to the garnishment filed his bill of interpleader to compel the garnishing creditors and payee in a bill of exchange to litigate among themselves their respective claims to the fund in the hands of the drawer, and in that proceeding the garnishing creditors prevailed over the payee.

In this case there is no pretense that the railway company, the drawee, had accepted the order of the drawer, the successful interpleaders, or that such order ever became a binding assignment. It is, however, contended that the filing of the bill of interpleader, long subsequent to the acquisition of the lien of the unsuccessful interpleaders on the fund under their process of garnishment, has the effect of an acceptance of the order by the drawee, and rendered the assignment binding. This contention is discountenanced by the cases just cited. Surely it cannot be that a bare rudimentary assignment, void in law and in equity, can after, the lien of the garnishing creditors has attached, obtain validity by the filing of a bill of interpleader by garnishee and thus operate to displace and postpone the liens of the garnishing creditors. If this act is equivalent to the acceptance of the order, at what time, does the lien of such an assignment become operative? From the date of the order or from the date of the filing of the interpleader? If from the former it can only be by operation of some fiction of the law, which does not exist, because at that time it was inoperative as a lien both in law and equity; and if by the latter, then it was subsequent in time to the garnishment liens.

The act of the drawer, Christie, in ignoring the existence of said unaccepted order, and the bringing of the suit in his own name for the entire debt, taken in connection with the acts and conduct of the payees, through a number of years, in seemingly not recognizing the existence of the order, and in taking an assignment of the judgment, clearly negatives the notion that there was any intention to make a present, irrevocable transfer of any part of the debt, or fund, in the hands of the railway company. The bringing of the suit, with the acquiescence of the interpleaders, by the creditor, against the debtor, for the whole debt, after the assignment had been proven abortive, we think, justifies the inference that there was a surrender, by the interpleaders, of any inchoate or other rights, acquired by them under it, so that, neither at the time of the service of the garnishments, nor at the time of the filing of the interplea, did the interpleaders have an operative assignment, which could be made the basis of a claim in equity to the fund in controversy, as against the garnishment of creditors.

The garnishing creditors, having acquired a lien upon the fund, by their process of garnishment, are in a situation to contest the right of the interpleaders, claiming under the assignment. They are not in the situation of volunteer interlopers, or intermeddlers, in the controversy. The assignment, until acceptance, which never took place, remained void. Upon principle and authority, as we have seen, this is so. To say that the garnishment creditors, with their lien, regularly acquired under the statutory proceeding in garnishment, cannot question the title of the assignee under it, to this fund, illy comports with our ideas of the principles and policy of equity jurisprudence.

This case is distinguishable from that of *Johnson Co. v. Bryson,* 27 Mo. App. 351. There it was held that the first assignee, not having perfected his title to the

debt, under the assignment, by giving the debtor notice thereof (Story Eq. Jurisp., sec. 1046) the subsequent assignment, and notice thereof, to the debtor, could not be questioned by him. The first assignment being inoperative, there accrued no rights under it, that authorized the calling in question of the second assignment. There was that want of interest in the fund which was necessary to enable the first assignee to controvert the validity of the second assignment. There is nothing in this case which lends support to the position of the successful interpleaders. There was no controversy there between creditors having a lien, acquired under the statute, as here, and a creditor claiming under an assignment.

Upon a consideration of the whole case, we have come to the conclusion that the decree directing that, out of the fund in the custody of the court, the claim interposed by Wright & Co. be first paid, was erroneous. The decree of the circuit court is reversed, and the cause remanded, with directions to it, that, out of the fund in its custody, to order the garnishment creditors be first paid, to the exclusion of the claim of the interpleaders, Wright & Co., in the order of their priority. All concur.