LUNT and COOK *vs.* THE BANK OF NORTH AMERICA, impleaded, &c.

49b 221
160a 201

*Checks* drawn in the ordinary general form, not describing any particular fund, or using any words of transfer of the whole or any part of the account standing to the credit of the drawer in the bank upon which they are drawn, but containing only the usual request directed to the bank, to pay to the order of the payee named, a certain sum of money, are of the same legal effect as inland bills of exchange; and do not amount to an assignment of the funds of the drawer, in the bank.

There is no liability of the party upon whom such an instrument is drawn, until after it is accepted; and until payment or acceptance, it is always revocable by the drawer.

APPEAL from a judgment entered at a special term, on a trial before a justice of this court without a jury. Jacob G. Conrad, a broker, at Chicago, Illinois, made a general assignment to the plaintiffs, in trust for the benefit of creditors, September 30th, 1864. Conrad had, at the time, on deposit with the Importers and Traders' Bank, in New York, $37,432.75, and $1500 with the defendants, Myers & Co. The balance in the Importers and Traders' Bank, at the trial, amounted to $39,943.61. Notice of the assignment was immediately given by the plaintiffs, by telegram and letter. Thereafter, in October, 1864, certain creditors of Conrad attached these moneys, and the plaintiffs, as such assignees, brought this action against the holders of the funds, the attaching creditors, and the sheriff, to set aside the asserted liens of the attachments, and to recover the funds. Conrad, in the course of his business, drew checks, at Chicago, upon the Importers and Traders' Bank of New York, and negotiated them in the course of business. He "sold exchange" on New York. The court allowed the defendants, the Bank of North America, to prove the possession by that bank of two checks; one for $20,000, the other for $25,000, transferred to it by the Second National Bank of Chicago. The checks, with the indorsements thereon, are as follows:

"J. G. Conrad, Banker,

Chicago, Sept. 26, 1864.

No. 14,784.   Duplicate unpaid.   $20,000.

Pay to the order of E. J. Tinkham, Cas., Twenty Thousand Dollars.                         {U. S. Rev. Stamp canceled, 2 cts.}

To the Importers and Traders' Bank, New York.

J. G. CONRAD.

Indorsed.   Pay Bank of North America, or order.

EDW. TINKHAM, Cash."


"J. G. Conrad, Banker,

Chicago, Sept. 27, 1864.

No. 15,825.   Duplicate unpaid.   $25,000.

Pay to the order of E. J. Tinkham, C. Twenty-Five Thousand Dollars.                         {U. S. Rev. Stamp canceled. 2 cts.}

To the Importers and Traders' Bank, New York.

J. G. CONRAD.

Indorsed.   Pay Bank of North America, or order.

E. J. TINKHAM, Cash."

The court held that these latter checks, negotiated at Chicago, prior to the assignment to the plaintiffs, constituted an equitable assignment of the fund in the Importers and Traders' Bank of New York; and therefore ordered judgment in favor of the Bank of North America, for the whole fund.   The court further ordered judgment against the plaintiffs in favor of the Bank of North America, for their costs.

The court held, that the assignment to the plaintiffs was legal and valid, and the plaintiffs entitled to recover under it the $1500 in the hands of Myers & Company; but this valid assignment was held ineffectual to transfer the fund in the Importers and Traders' Bank.

The plaintiffs appealed.

*E. L. Fancher,* for the appellants.   I. There is no difference between a banker's check and a bill of exchange; the

same rules apply to both. (*Harker* v. *Anderson*, 21 *Wend.* 372, *and cases cited.   Bowen* v. *Newell*, 8 *N. Y. Rep.* 190.)

II. A check on a bank, unaccepted, is merely an order upon the bank, on which the bank is not liable until it is accepted. (*Schneider* v. *Irving Bank*, 1 *Daly;* 500.)

III. An unaccepted check on a bank does not, at law or in equity, work an assignment of the fund in the bank, or create any lien upon it. (*Dykers* v. *Leather Manufacturers' Bank*, 11 *Paige*, 612. *Harris* v. *Clark*, 3 *Comst.* 93. *Cowperthwaite* v. *Sheffield*, 3 *N. Y. Rep.* 243. *Winter* v. *Drury*, 5 *N. Y. Rep.* 525. *Chapman* v. *White*, 6 *id.* 412.)

IV. The drawer of a check owes no duty to the holder until the check is presented *and accepted.* (*Chapman* v. *White*, 6 *N. Y. Rep.* 417.)

V. The doctrine that a check is an appropriation of so much money in the hands of a banker to the holder of the check, has been repudiated by repeated decisions in this state. (*See cases cited on third point.*)

VI. The checks held by the Bank of North America were drawn on a bank in New York, and by their terms made payable here. Therefore the law of New York controls their interpretation and effect. (*Everett* v. *Vendryes*, 19 *N. Y. Rep.* 436. *Bowen* v. *Newell*, 13 *id.* 290. *Hyde* v. *Goodnow*, 3 *id.* 269. *Lee* v. *Silleck*, 33 *id.* 615.)

VII. The common law of England prevails in Illinois by virtue of a statute of that state, proved on the trial of this action. The decisions in Illinois, referred to by the respondents, cannot aid them, for two reasons : 1. The checks in question are not to have effect or be construed according to the law of Illinois ; for, being payable in New York, the law of the latter state governs. 2. The Illinois decisions are erroneous ; are plainly repugnant to the common law, and contrary to the decisions in New York, *supra*, and to those of the United States Supreme Court. (*Mandeville* v. *Welch*, 5 *Wheat.* 286. *Tieman* v. *Jackson*, 5 *Peters*, 580.) And

those in England. (*Williams* v. *Everett,* 14 *East,* 582. *Grant* v. *Austin,* 3 *Price,* 58.)

VIII. The judgment of the special term should be reversed, with costs ; the plaintiffs adjudged to be entitled to the $39,943.61, and, forasmuch as the Bank of North America has taken the fund under the judgment herein, restitution to the plaintiffs should be ordered against that bank for said amount, with interest from the 15th February, 1866, with the costs of this action paid that bank, and with the plaintiffs' costs herein.

*S. P. Nash,* for the Bank of North America.    I. The court, at special term, held that the check for $20,000, dated September 26th, 1864, which was presented to the Importers and Traders' Bank on the 30th September, 1864, was an equitable assignment to that amount, to the Bank of North America, of the fund of $39,943.61 remaining in the hands of the said Importers and Traders' Bank, and constituted the first equitable lien thereon, *as against all other parties to this action;* and that the said check for $25,000, dated September 27th, 1864, constituted a like equitable assignment of the residue, and was the second equitable lien thereon, *as against all the other parties to this action.*    As no party has excepted to or appealed from this decision except the plaintiffs, assignees of *Conrad,* the only question is whether they have a better right to it.

1. As a general rule, a voluntary general assignee of an insolvent debtor takes the assigned estate subject to all charges and equities thereon. (*Van Heusen* v. *Radcliff,* 17 *N. Y. Rep.* 580.  *Haggerty* v. *Palmer,* 6 *John. Ch.* 437.)  The assignment is to be construed as though the estate was conveyed expressly subject to all prior dispositions made of it by the assignee.  In this case, there is no evidence that *Conrad* intended to revoke the payment of the checks.  In due course of mail, they would reach his bank in time to be paid before he made his assignment, and they were in fact

presented before it was executed. He supposed that they would be paid, and the description in the assignment of the property he intended to convey as property "now belonging to the party of the first part," implies that it was such property as he had retained, not such as he had drawn against and appropriated, that he was assigning. As against *Conrad's* assignees, therefore, there seems to be no difficulty in holding that the owners of these checks had the prior right.

2. Though there are *dicta* to the effect that a check, unless accepted, does not operate as an equitable assignment, none of the cases in our courts are in reality adverse to the decision of the special term. In *Harris* v. *Clark*, (3 *Comst.* 93,) the question was whether an unaccepted bill of exchange delivered by the drawer during his last illness, was a good *donatio mortis causa.* The distinction drawn by Ruggles, J. in the prevailing opinion, between a check and a bill of exchange (*pp.* 119, 121) goes far to sustain the decision in this case. (*See Lawson* v. *Lawson*, (1 *P. Williams*, 141,) commented on in 3 *Comst.* 118, 119, and in *Craig* v. *Craig*, (3 *Barb. Ch.* 117, 118.) *Cowperthwaite* v. *Sheffield*, 3 *Comst.* 243,) was also a case of bills of exchange, not of checks. In *Dykers* v. *Leather Man. Bank*, (11 *Paige*, 612,) the complainants claimed to make the bank liable for having paid out the drawer's funds on other checks. The court held that the complainant had shown no priority for their check, as having been first drawn or presented, over the checks of other holders, who were equally entitled, and dismissed the suit. In *Chapman* v. *White*, (2 *Seld.* 412,) the funds of the bank on which the check was drawn had passed into the hands of a receiver before the check was indorsed and presented. None of these cases present the question as arising between the holder and the drawer's assignee. *Winter* v. *Drury*, (1 *Seld.* 525,) is nearest like the case at bar. There, however, the assignor had received the funds from the depositary and paid them out in good faith without notice of the draft, and it was

held he was not liable. There is, then, no case in our courts which holds that a general assignee may compel a bank, to which a check drawn by the assignee has been presented for payment prior to the assignment, to withhold payment and deliver the fund to the assignee.

3. On principle, there is no difficulty in sustaining the rights of the Bank of North America as against the assignees. The transaction was, in fact, a sale by *Conrad* of his funds in the Importers and Traders' Bank for a valuable consideration paid at the time. Assume that it was in form imperfect to carry out the intent, yet equity, on well settled principles, would help out the defect. (2 *Story's Eq.* § 1041, 1047. *Harris* v. *Clark*, 3 *Comst.* 93, 109.)

4. *Conrad* had received, on the 26th and 27th September, $45,000 as a consideration for appropriating an equal amount in his bank in New York to the use of the purchaser of his checks ; to allow him, or his voluntary assignee, to revoke that appropriation, *without returning the money received,* would be to lend the aid of the court to a gross fraud. It is the plaintiff's assignees, who doubtless received, under the assignment of the 30th September, a large portion of the money received by *Conrad* on the 26th and 27th, who are now asking the aid of the court. They must come with clean hands to be entitled to relief.

5. The doctrine of equitable assignment assumes that there is no remedy at law. The court of equity to prevent fraud, to protect purchasers in good faith, and to enforce justice between parties, lays hold of a fund appropriated in purpose and intention, but inadequately disposed of in law, and carries out the intent of the parties, where no rights or equities of other parties are violated. Here there are no rights superior to those of the check holder.

II. The law of Illinois was made part of the case. The question, as between the plaintiffs and the Bank of North America, should be governed by that law. The checks were drawn and negotiated, in Chicago, to the bank there to whose

rights the Bank of North America has succeeded. The assignment was made in Chicago, and must be held to have passed only such property as according to the laws of Illinois, *Conrad* had not already charged. The fund in New York, being personal property, is to be deemed present in Illinois, the place of the owner's domicil, and there all the parties to the original transactions resided. (*Van Buskirk* v. *Warren*, 34 *Barb.* 457. *Moore* v. *Willett*, 35 *id.* 663. *Artisans' Bank* v. *Park Bank*, 41 *id.* 599.) There can be no question that by the law of Illinois, the purchaser of these checks became the equitable assignee of the fund against which they were drawn. (*Munn* v. *Burch*, 25 *Ill. Rep.* 35. *Chicago Mar. and Ins. Co.* v. *Sanford*, 28 *id.* 168. *Marine Bank* v. *Ogden*, 29 *id.* 248. *Springfield Mar. and Fire Ins. Co.* v. *Tucker*, 30 *id.* 399. 5 *Gilman*, 346. *Talcot* v. *Dudley*, 4 *Scammon*, 435. *Case cited in* 34 *Barb.* 457. *Tinkum* v. *Hayworth*, 31 *Ill. R.* 519. *Mar. Bank, Chicago* v. *Chandler*, 27 *id.* 546.)

III. The presentation to the Importers and Traders' Bank was full and complete. The checks had been presented through the clearing house before the execution of the assignment. They were presented by the holder himself before the bank had received notice of the assignment. There was no refusal to pay by the bank, but simply a hesitation growing out of the state of the accounts. What then took place was equivalent in equity to an acceptance of the checks to the extent of the funds available towards paying them, though undoubtedly, according to the law merchant, the bank was not bound to pay without funds enough to pay in full. By its answer the bank set up no rights in itself or others in opposition to the true claims of the check holders, but submitted the fund to the adjudication of the court. (*Kilsby* v. *Williams*, 5 *B. & Ald.* 815.).

*By the Court,* LEONARD, P. J. The Bank of North America are the holders of two checks drawn by Jacob G. Conrad of Chicago, banker, in favor of E. J. Tinkham,

cashier of the Second National Bank of Chicago, upon the Importers and Traders' Bank of New York, together for the amount of $45,000, and by the said cashier indorsed to the Bank of North America. The checks were drawn and dated respectively the 26th and 27th days of September, 1864. They were presented for payment during the forenoon of September 30, but it was refused, for the want of funds. There were also several other checks drawn by Conrad for value, at Chicago, upon the same bank, in New York, shortly after the said two checks, which were also presented for payment, and refused, at the same time with the said two checks.

The whole balance in bank, applicable to the payment of these checks, on the morning of September 30, 1864, was less than $31,000, and the Importers and Traders Bank reduced that balance on the same day over $25,000, by charging to Conrad certain uncollected demands not then due, in the possession of the bank for collection for the account of Conrad. These and other demands were subsequently collected by that bank, so that at the trial there was about $40,000 in bank, arising from the funds and assets of Mr. Conrad.

On the 30th of September, 1864, Mr. Conrad executed a general assignment for the benefit of his creditors, to the plaintiffs in this action, Lunt & Cook, by virtue of which they claim to recover the funds and assets placed by Mr. Conrad in the said bank.

There are other facts relating to the rights of other defendants, but no appeal has been taken in their behalf, and we have no occasion to refer to them. The Bank of North America claim that the said checks now held by that bank, amount to an equitable assignment, not only of the sum standing to the credit of Mr. Conrad on the 30th of September, but also of the sums subsequently collected by the Importers' and Traders' Bank from demands received from him for collection, and this court at special term have rendered judgment according to the said claim of the Bank of North America, and against the claim of the plaintiffs.

Lunt *v.* Bank of North America.

The checks held by the said Bank are drawn in the ordinary general form, not discribing any particular fund, or using any words of transfer of the whole or any part of the account standing to the credit of Mr. Conrad. They contain only the usual request, directed to the bank, to pay to the order of the payee named a certain sum of money.

Such checks have long been held, both by elementary writers, and judicial decisions in this state, to be of the same legal effect as inland bills of exchange. There is no liability of the party upon whom such an instrument is drawn until after it is accepted. Such check is always revocable by the drawer until payment or acceptance. How can it be said that these checks held by the Bank of North America are an assignment of the funds of the drawer, any more than the subsequent ones drawn before the execution of the assignment to the plaintiffs ?

Neither have been preferred by the general assignment of Mr. Conrad. The payee took no special security upon the bank account of the drawer. He could have done so, had he not been satisfied with the credit or mercantile honor of the drawer, before parting with his money.

The two cases in 3d Comstock's Reports are entirely conclusive in the case before us. Judge Ruggles says, in the case of *Harris* v. *Clark*, (*p.* 115,) "The research of the counsel for the plaintiff has not enabled me to find a case where it has been held that upon a negotiable bill of exchange the drawee has been made liable in equity to the holder of the bill without his acceptance or assent. Such an instrument gives to the holder no lien upon the funds in the hands of the drawee." That case also holds that a draft payable out of a particular fund operates as an assignment *pro tanto* to the drawee ; that an accepted bill of exchange operates in the same way, but that effect is not given to a bill not accepted. The learned judge also adds, " The principle appears to be firmly established that a bill of exchange does not of itself give to the holder, either at law or in

equity, a lien upon the funds of the creditor in the hands of the debtor until after acceptance by the latter." The cases are carefully reviewed, and it is unnecessary here to repeat what has been there so well stated. I am unable to perceive any difference, in the application of these principles, between the case of an unaccepted bill of exchange and a banker's check. The reasoning is in force here, although in the case just referred to the action was assumpsit to recover upon a bill of exchange, delivered by the drawer to his sister without consideration, *donatio mortis causa.*

The case of *Cowperthwaite* v. *Sheffield,* (3 *Comst.* 243,) was an action of assumpsit to recover the amount of a bill of exchange drawn against a shipment of cotton, which was refused acceptance. The Court of Appeals, notwithstanding very strong equities in favor of the plaintiffs, decided against the claim that the bill should be held to be an equitable transfer or appropriation of the proceeds of the cotton.

There is no evidence or finding to warrant the presumption that the plaintiffs relied upon anything but the credit of the drawer and indorser of this check. There was no verbal arrangement even, that the check was to operate as an assignment of the fund or property in the bank upon which it was drawn.

In the case last referred to, it was said, (*p.* 252,) that such a claim "could only be in favor of a party who had notice of the arrangement, between the drawer and drawee to appropriate the fund, and who had purchased the bills or became liable upon them, upon the faith of it." In that case there was a letter of advice that the bills had been drawn against the shipment of cotton, which, no doubt, induced the Bank of England to discount the bills. But this was held not sufficient to create an equitable appropriation. No such fact exists in this case. Were this court to sustain the judgment, it would confer a new capacity upon mercantile or banker's checks not before supposed to exist.

The judgment should be reversed, and the Bank of North

America be adjudged to return the money with interest, and that the plaintiffs recover the amount of the fund with costs of the action and of the appeal, from the said bank.

[NEW YORK GENERAL TERM, June 3, 1867, *Leonard, Clerke,* and *Welles,* Justices.].