## SUPERIOR COURT.

### WILLIAM C. EGERTON agt. THE FULTON NATIONAL BANK.

A *bank* is not authorized to pay a *note* of its depositor, made payable at the bank,. and charge him with the amount thereof where the depositor, before the maturity of the note, has *notified the bank not to pay it.*

The relation of a bank with its depositors considered.

*Special term.*

ACTION tried at the trial term without a jury, January, 1872.

GEORGE W. VAN SLYCK, *for plaintiff.*
GEORGE W. WRIGHT, *for defendant.*

This is an action to recover the sum of two hundred and forty-four dollars and ninety cents, claimed to be due and owing by the defendants to the plaintiff.

For several years prior to September, 1871, the plaintiff had been a depositor in the defendant's bank. In June, 1869, the plaintiff made and delivered his promissory note for the above mentioned sum, payable in sixty days to the order of T. McManus, at the defendant's bank. Before the maturity of the note, the plaintiff notified the bank not to pay or accept it. Notwithstanding such notice, the bank did pay the amount of the note to the holder, and charged the plaintiff with the amount, and subsequently delivered the note to the plaintiff as a voucher for such payment.

The plaintiff denied the right of the bank to pay after the notice, and demanded the amount of the bank.

The note was not returned nor offered to be returned to

the bank ; but was merely produced by the plaintiff on the trial, ready to be delivered to the defendant.

MONELL, *J.*—The plaintiff having made his promissory note payable at the defendant's bank, it may be treated as an inland bill of exchange drawn against a general fund.   It did not, however, appropriate the fund, or confer any right to it, on the holder of the note ; and the bank could refuse to pay, without incurring any liability to the holder.

The relation between a bank and its depositor is that of debtor and creditor, and not of bailee and bailor.   The bank has the absolute and legal title, and is liable only in the character of an ordinary debtor (*Com. Bk. of Albany* agt. *Hughes,* 17 *Wend.,* 94 ; *Matter of Franklin Bk.,* 1 *Paige,* 249 ; *Chapman* agt. *White,* 6 *N. Y.,* 412 ; *Graves* agt. *Dudley,* 20 *N. Y.,* 80 ; *Dykers* agt. *Leather Manf. Bk.,* 11 *Paige,* 612 ; *Lent* agt. *Bk. of N. A.,* 49 *Barb.,* 221).

The drawer of a bill has a right to stop its payment ; and after notice to the drawee not to pay, the latter will pay at his peril ; and it cannot, I think, be claimed, that the effect of the notice is merely to make the payment subject to any defenses of the drawer in the hands of the holder ; or a bill so paid a valid security in the hands of the drawee.

In this case, the bank is to be regarded as the drawee of a bill, having funds of the drawer, against which it is drawn, and in that sense, the agent of the drawer.   The revocation of the direction to pay, was therefore, for the protection of the fund, against its appropriation to a supposed improper purpose, and to prevent such appropriation, to the injury of the drawer, as if the note had been stolen or obtained through fraud.

In one aspect, however, it may be claimed that, notwithstanding the notice not to pay, the bank by paying to the holder the face of the note became a purchaser for a sufficient consideration, and therefore, as holder took the note subject only to any defenses of the maker against any of

the parties to it. In that view, if the note was valid in the hands of the party to whom it was paid by the bank, it would be equally valid in the hands of the latter.

But the transaction was not a purchase.

On presentation the note was paid and the amount charged to the plaintiff. It was then returned to him as a voucher of the payment.

No claim was made that it was, in fact or in effect, a purchase. It was paid by mistake, and in forgetfulness of the direction not to pay, and no demand was made by the bank for its return. It is not set up in the answer, either as a set-off or counterclaim; but the whole defense rests upon an allegation of a payment, upon the order of the plaintiff of his entire deposit; and the note is averred to be a portion of such payment.

In dealings between a depositor and a bank, whatever may be their legal relation, they act substantially upon the principal of agency. Having received the funds of the depositor, they pay his drafts, and they are bound, as I think, to obey all his directions for the disposal of his funds. They cannot, it seems to me, disobey his orders, either wilfully or innocently, and then claim a new and different relation, with rights inconsistent with such as before existed.

In paying a draft after payment has been stopped, a bank cannot be protected, without an essential change in the accustomed and commonly understood duty which it owes to its depositor, or a total disregard of its obligations to him.

These views are in accordance with the cases of *Schneider* agt. *Irving Bank* (1 *Daly*, 500); and *Lent* agt. *Bk. of N. A.*, (49 *Barb.*, 221).

I am, therefore, of the opinion that under the circumstances, the defendant was not authorized to charge the plaintiff with the amount of the note in question, and that the payment of it by the bank is not available as a defense to this action.

The plaintiff must have judgment.