DICKINSON v. COATES, *Assignee of the Mastin Bank, Appel-lant.*

**Bank Checks.** A bank check drawn for a part only of the drawer's deposit does not operate either at law or in equity as an assignment of the deposit *pro tanto* or confer any lien upon it. See *Merchants' National Bank v. Coates, ante,* p. 168.

*Appeal from Jackson Circuit Court.*—HON. S. H. WOODSON, Judge.

REVERSED.

*Pratt, Brumback & Ferry* for appellant.

*Kagy & Magrath* for respondent.

NORTON, J.—This case is before us on defendants' appeal from the judgment of the circuit court of Jackson county. It appears from the record that the Mastin Bank, a corporation organized under the laws of this State for the purpose of transacting a general banking business at Kansas City, on the 2nd day of August, 1878, drew and delivered to plaintiff its check upon the Metropolitan National Bank of New York, as follows, to-wit:

$500.          *State of Missouri,*          No. 196,225.
                MASTIN BANK,
            KANSAS CITY, Mo., August 2nd, 1878.
·Pay to the order of M. H. Dickinson five hundred dollars.                    JOHN J. MASTIN, Cashier.
To Metropolitan National Bank, New York.

It appears that the said Metropolitan National Bank was the regular correspondent of the Mastin Bank, and its depository in New York, and at tne time the above check was drawn the Mastin Bank had on deposit and to its credit in the said Metropolitan National Bank subject to draft or check between $50,000 and $60,000; that on the 3rd day of August, the day after the above check was drawn. the Mas-

tin Bank closed its doors and made an assignment in due form of law of all its assets of every description to defendant Coates for the benefit of its creditors generally, of which said assignment the said Metropolitan Bank was duly notified on the day it was made; that the said check, drawn in favor of plaintiff, was not presented to the Metropolitan Bank till the 5th day of August, 1878, when payment was refused and the check protested for non-payment, of which due notice was given; that in the months of September and October, 1878, defendant Coates, as assignee, collected of said Metropolitan National Bank between $50,000 and $60,000. The above are substantially the facts set out in plaintiff's petition, and he claims that they give him a right to a judgment and decree of the court, declaring that defendant Coates hold the money so collected of the Metropolitan Bank to the use of plaintiff, and that he be ordered to pay over to plaintiff the sum of $500, the amount of said check, and interest thereon. This claim is resisted by defendant Coates on the ground that the amount collected by him of said bank belonged to the trust fund held by him under the assignment, and can only be paid *pro rata* on claims against the trust fund allowed in the course of administering the trust. The circuit court made the order and decree as prayed for by plaintiff, and defendant, on this, his appeal, asks its reversal, on the ground that it is against the evidence and the law of the case.

It will be perceived from the above statement that the controlling question arising on this record is: Did the check in question, it being neither drawn on any particular fund, nor for the whole sum due the drawer from the drawee, nor containing any words of transfer, operate before its presentment and acceptance by the drawee as an assignment either in law or equity of so much of the deposit standing to the credit of the drawer in the New York bank as the check called for? An affirmative answer to this question affirms, and a negative one reverses the judgment.

Inasmuch as the principle involved is one of importance and upon which there is some conflict of opinion, counsel, in view of the decision of the St. Louis court of appeals in the case of *McGrade v. German Savings Bank Association*, 4 Mo. App. 330, have earnestly insisted that the authorities bearing upon the subject be reviewed by us with a view to the settlement of the question in this State. The conflicting authorities cannot be reconciled, and we shall not attempt it, but will only consider them for the purpose of ascertaining on which side of the question the weight of authority as well as reason lies. The question presented has been answered in the negative by the Supreme Court of the United States in the following cases : *Thompson v. Riggs*, 5 Wall. 663; *Bank v. Whitman*, 94 U. S. 343; *Christmas v. Russell*, 14 Wall. 69; *Bank of Republic v. Millard*, 10 Wall. 152.

In the case last cited, Justice Davis, who delivered the opinion of the court, observed : "It is no longer an open question in this court since the decisions in the cases of the *Marine Bank v. Fulton Bank*, and of *Thompson v. Riggs*, that the relation of banker and customer in their pecuniary dealings is that of debtor and creditor. It is an important part of the business of banking to receive deposits, but when they are received, unless there are stipulations to the contrary, they belong to the bank, become part of its general funds, and can be loaned by it as other moneys. The banker is accountable for the deposits which he receives as a debtor, and he agrees to discharge these debts by honoring the checks which the depositors shall from time to time draw on him. The contract between the parties is purely a legal one, and has nothing of the nature of a trust in it."
*    *    "The holder takes the check on the credit of the drawer, in the belief that he has funds to meet it, but in no sense can the bank be said to be connected with the transaction. If it were true that there was a privity of contract between the banker and holder, when the check was given, the bank would be obliged to pay the check,

although the drawer, before it was presented, had counter-manded its payment and although other checks drawn after it was issued, but before payment of it was demanded, had exhausted the funds of the depositor. If such a result would follow the giving of checks, it would be easy to see that bankers would be compelled to abandon altogether the business of keeping deposits for customers." * *

"The right of a depositor," as was said by an eminent judge, "is a chose in action, and his check does not trans-fer the debt or give a lien upon it to a third person without the assent of the depositary. This is a well established principle of law, and is sustained by the English and Amer-ican authorities."

In the case of *Christmas v. Russell, supra,* Justice Swayne, speaking for the court, said that "a bill of ex-change or check is not an equitable assignment *pro tanto* of the funds of the drawer in the hands of the drawee."

The English authorities are to the same effect, of which the case of *Hopkinson v. Foster,* 12 L. R., Eq. Cas. 74, (de-cided in 1873,) is a type, and where it was held that a check was not an equitable assignment of the drawer's balance at his banker's.

The courts of New York also return a negative answer to the question before us in the following cases: *Lunt v. Bank of North America,* 49 Barb. 221; *Chapman v. White,* 2 Seld. 412; *Ætna Bank v. Fourth National Bank,* 46 N. Y. 82; *Duncan v. Berlin,* 60 N. Y. 151; *Attorney General v. Life Ins. Co.,* 71 N. Y. 325. In the case of *Lunt v. Bank of North America, supra,* it is said: " Checks drawn in the ordinary general form not describing any particular fund, or not using any words of transfer of the whole or any part of the account standing to the credit of the drawer in the bank upon which they are drawn, but containing only the usual request directed to the bank, to pay to the order of the payee named a certain sum of money, are of the same legal effect as inland bills of exchange, and do not amount to an assignment of the funds of the drawer in the bank.

and there is no liability of the party upon whom such an instrument is drawn until after it is accepted, and until payment or acceptance it is always revocable by the drawer." In the case of the *Ætna National Bank v. Fourth National Bank, supra,* it is said: "The relation of banker and depositor is that of debtor and creditor. Deposits on general account belong to the bank and are part of its general fund. The bank becomes a debtor to the depositor to the amount thereof, and the debt can only be discharged by payment to the depositor or pursuant to his order. Until payment or acceptance by the bank of a depositor's check or assignment of the credit by the depositor and notice to the bank, the deposit is subject to his order."

So in Pennsylvania, in the case of *Lloyd v. McCaffrey,* 46 Pa. St. 410, it was said by Justice Strong, speaking for the court, that "it cannot be maintained that Taylor's check, without more, amounted to an equitable appropriation of the funds in the hands of the banker to whom it was addressed. To make an order or draft an equitable assignment it must designate the fund upon which it is drawn."

So in Massachusetts, in case of *Carr v. National Security Bank,* 107 Mass. 45, s. c., 9 Am. Rep. 6, Justice Gray, who delivered the opinion, speaking of general deposits, observed that "money deposited becomes the absolute property of the bankers, impressed with no trust, and which they may dispose of at their pleasure, subject only to their personal obligation to pay an equivalent sum upon his demand or order. The right of the bankers to use the money for their own benefit is the very consideration for their promise to the depositor. They make no agreement with the holder of his checks. A check drawn by a depositor in common form not designating any special fund out of which it is to be paid, nor corresponding to the whole amount due him from the banker at the time, is a mere contract between the drawer and the payee on which, if payable to bearer, and not paid by the drawee, any holder might, doubtless, sue the drawer, but which passes no title, legal or equitable,

to the payee or holder in the moneys previously paid to the banker by the drawer." So in the case of *Bullard v. Randall*, 1 Gray 605, it was held that a check for a part of the drawer's funds in a bank constitutes no assignment of that part of such funds until presented for payment and accepted by the bank, although verbally assented to by the cashier when absent from the bank. So in case of *Dana v. National Bank*, 13 Allen 445.

In Maryland, in case of *Moser v. Franklin B'k*, 34 Md. 580, it was held that a check does not operate as an assignment *pro tanto* of the fund on which it is drawn, until it is accepted or certified to be good by the bank holding the fund; and the doctrine of the case of *Chapman v. White*, 2 Seld. 412, approved, where it was held that a check before acceptance neither operates as an assignment nor creates any lien on the funds of the drawer. See also 2 vol. Add. on Con., 493 ; Byles on Bills, 39, note 1, 2 vol. ; Par. on Notes and Bills, 61, note J ; also case of *Bush v. Foote*, 58 Miss. 5 ; *s. c.*, 38 Am. Rep. 310 ; 11 Reporter 94.

We have been cited by counsel for plaintiff to a number of authorities as establishing a contrary doctrine to that assumed in those above referred to, and upon examination of them find but three states where the question has otherwise been ruled upon by the courts of last resort. In South Carolina, in the case of *Fogarties v. Skillman*, 12 Rich. 518, it was held by a divided court (the chief justice dissenting) that when a check is drawn by a depositor on a bank having sufficient funds to meet it, the holder, on giving notice to the bank, has the right to be paid, and if payment be refused may maintain an action against the bank on the implied promise which the law raises in his behalf.

In Illinois, in the case of *Munn v. Burch*, 25 Ill. 35, it was held that "the check of a depositor on his banker, delivered to another for value, transfers to that other the title to so much of the deposit as the check calls for." Upon an examination of this case it will be seen that not a single

authority, either English or American, is referred to as maintaining the doctrine announced; but the conclusion reached is made to rest upon a judicial recognition of what is alleged in the opinion to be a universal custom of bankers to allow depositors to withdraw their funds in parcels. This case was followed in 28 Ill. 168, also without the citation of a single authority, Justice Catron remarking that "the decision of *Munn v. Burch* was not made till after the most mature investigation." The case of *Munn v. Burch*, *supra*, was also followed in case of *Bank v. Bank*, 80 Ill. 212, and as the logical result of the doctrine enunciated by it, the court went so far as to say that "after a check had passed into the hands of a *bona fide* holder it is not in the power of the drawer to countermand its payment," a doctrine not maintained by any authority that has come under our observation. s. c., 22 Am. Rep. 185.

In Iowa, in the case of *Roberts v. Austin, Corbin & Co.*, 26 Iowa 315, it was held by a divided court that the holder of a check could maintain an action thereon against the drawer before acceptance, the drawer having funds in his hands, and that a general assignment of the drawer for the benefit of his creditors, after drawing the check, but before the same is presented, will not invest his assignee with the right to the money represented by the check, nor affect the rights of the payee therein.

The cases in Kentucky to which we have been cited, of *Buckner & Co. v. Sayre*, 18 B. Mon. 745, and *Lester & Co. v. Given, Jones & Co.*, 8 Bush 357, do not maintain the position contended for. The said case of *Buckner & Co. v. Sayre* only decides that the drawing of a bill of exchange by a debtor and its acceptance by the drawee, is an appropriation of that fund to the holder of the bill, and that thereafter the drawer of the bill has no right to control it, either by receiving or assigning it, and that a general assignment of assets after a bill of exchange has been drawn and accepted, will not pass the fund thus appropriated, and the ruling in the case of *Lester & Co. v. Given, Jones & Co.*,

*supra*, is based solely upon the case of *Buckner v. Sayre.* So far from the case in 18 B. Mon., *supra*, being in conflict with the New York and like cases cited herein from other states, it is in accord with them.

The decided weight of authority answers the question propounded in the beginning of this opinion in the negative. This answer is returned by the Supreme Court of the United States, the courts of last resort in Maryland, Massachusetts, New York and Pennsylvania, while an affirmative response is given by the divided courts of Iowa and South Carolina, and by the case of *Munn v. Burch*, 25 Ill., which as an authority has been sufficiently adverted to in what has been said, and so far as this court has heretofore been called on to pass upon questions kindred to the one in hand, it has ruled in accordance with the doctrine announced by the Supreme Court of the United States and the courts of Maryland, Massachusetts, New York and Pennsylvania.

In the cases of *State ex rel. Mississippi Co. v. Moore*, 74 Mo. 413, and of the *State ex rel. v. Powell*, 67 Mo. 395, it was held that a general deposit created the relation of creditor and debtor; and in the case of *Burnett v. Crandall*, 63 Mo. 410, it was held that a portion of a debt was incapable of assignment either at law or in equity in the absence of the debtor's consent. So in the case of *Loomis v. Robinson*, 76 Mo. 488, it was held that an assignment of part of a judgment was void both at law and in equity. If, as established by the above cases, the relation between depositor and banker is that of creditor and debtor, and a creditor cannot, either at law or in equity, assign a part of the debt due him without the debtor's consent, it must follow logically that the check held by plaintiff, being only for part of the debt due the drawer and not having been accepted by the drawee, did not transfer to plaintiff either a legal or equitable right against the drawee, either to so much of the fund as the check called for or give him any lien thereon. In the case of *St. John v. Homans*, 8 Mo. 382, it was held,

Judge Scott delivering the opinion, that "it could not be maintained that the mere act of drawing a check was an assignment of the amount for which it was drawn to the bearer."

In our investigation of this question we have confined our examination to the decisions of courts of last resort, and in the light of the authorities we must answer the question presented by this record in the negative, and hold that the fund sought to be appropriated by plaintiff to the payment of his debt and in the hands of defendant as assignee is only subject to *pro rata* distribution among the creditors of the Mastin Bank, of whom plaintiff is one, whose claims have been allowed in due course of administering the trust.

Judgment reversed and bill dismissed, and defendant shall have judgment for all costs. All concur.