Bradley Fertilizer Company v. Lathrop.

# City Court.

### Trial Term—April, 1886.

## THE BRADLEY FERTILIZER COMPANY *against* FREDERICK G. LATHROP et al.

Where a creditor receives a check on a bank in payment of a debt, he takes upon himself the duty of presenting the check to the bank without unreasonable delay. If the creditor is guilty of unreasonable delay, and the bank fails in the meantime, the loss is on the creditor. But if the drawer of the check stops payment of it at his bank, the subsequent failure of the bank is no defense to him in an action on the check.

Motion for judgment on special verdict.

McAdam, Ch. J.—The finding by the jury that payment of the checks in suit was stopped by the defendant some weeks before the bank on which they were drawn, failed, determined the main question involved in this case and entitles the plaintiff to judgment on the verdict. The ordinary relation existing between a bank and its customer, if not complicated by any further transaction than that of the depositing and withdrawing of moneys by the customer from time to time, is simply that of debtor and

creditor. The original and every subsequent deposit by the customer is, in strict legal effect, a loan by the customer to the bank and *e converso* every payment by the bank to, or on account of the customer, is a repayment of the loan *pro tanto* (*Morse on Banking*, 2 ed. 28). The bank becomes, to the extent of the money on deposit, the agent of the depositor, and must follow his directions as to honoring or refusing payment of checks or drafts. This contract is implied from the usual course of doing such business (*Id.* 37).

But the bank owes no duty to the holder of a check drawn upon it, and may refuse payment (even though the drawer has ample funds on deposit), without being liable to an action by such holder. This is because there is no privity between the holder and the bank, and the latter does not become a party to the check until acceptance or payment by it (*Ball on Nat. Banks*, 265), nor does a check upon the general fund operate as an assignment *pro tanto* to the payee, unless it has been accepted by the drawee (*Ib.*). Money deposited with a bank ceases altogether to be the money of the person paying it in; it becomes the money of the banker, who is to return an equivalent by paying a similar sum to that deposited with him, when he is asked for it (*Grant Law of Banking*, 3 ed. 2). Hence it is said that the relation between a banker and his customer is that of debtor and creditor only (*Id.* 5).

The receipt of a check is in itself no satisfaction of a debt until it is honored, and the holder may present it at any time within six years from its date; and if things have continued the same, and no damage has arisen from the delay in presentment, the drawer is liable on the check if it is dishonored, but if, before the presentment of the check, the banker on whom it is drawn has failed, or if by reason of the non-presentment of the check the position of the drawer, with respect to the fund on which the check was drawn, is altered for the worse and the check

is consequently dishonored, the drawer is discharged, unless the holder can show that he has not been guilty of unreasonable delay; and what is unreasonable delay is a question to be decided on the facts of each case (*Walker Bank. Laws*, 63, and cases there cited).

The giving and taking of a negotiable check on a bank or banker for and on account of a debt is, however, on technical grounds deemed equivalent to payment until it has been presented for payment and refused (*Id.* 91; *Monroe Bank. Dec.* § 132), for by accepting the check the holder takes upon himself the performance of this duty, and the risk of doing it diligently is upon him. These are some of the principal rules regulating the drawing and presentation of bank checks, to which there are several exceptions; one of which is that where the drawer of a check stops payment of it, he knows it cannot be paid, and cannot therefore object to the want of notice of non-payment (Purchase *v.* Mattison, 6 *Duer*, 587; Jacks *v.* Darrin, 3 *E. D. Smith*, 557). Until payment or acceptance, checks, which are mere orders to pay, may be revoked by the drawer (Lunt *v.* Bank of North America, 49 *Barb.* 221; Van Allen *v.* American National Bank, 3 *Lans.* 517; Freund *v.* Importers' and Traders', 3 *Hun*, 689).

This rule was practically applied in Schneider *v.* Irving Bank (30 *How. Pr.* 190), where the court held that "where a bank receives notice from a depositor not to pay his outstanding check, as he has a defense to it, and the teller of the bank promises not to pay it, but subsequently when the check is presented it is paid by the bank, the bank is liable to the depositor for the amount. A check is but an order on the bank, which it has not accepted, and upon which it is not liable. It is, therefore, competent for the drawer to revoke the authority which he has given to the bank to apply their funds to the payment of it."

The stoppage of payment, therefore, prevented the bank (the defendant's agent) from paying the checks to

anyone, for the authority to pay was legally counter-manded (1 *Wait Act. & Def.* 643). Presentation and notice after that would have been idle ceremony, which the law, in adapting itself in a practical way to business usages, does not require.

The stoppage made the payment by the bank an impossibility and left the holder of the checks without any remedy, except that which the law gave against the defendants as the principal debtors, and if there is no remedy against them, there is a consequent failure of justice. The stoppage of the checks operated as an election by the defendants to treat the entire fund on deposit as their own, and as a denial and exclusion of the holders of the checks in question to any participation in it. The bank did not fail until several weeks after this time, and the defendants were free from the time of the stoppage to draw from the bank the entire amount to their credit, unembarrassed in any way by the existence or loss of the checks, the payment of which had been rendered impossible. If they had previously made any appropriation of money to these checks by clerical entries on their check-books, the stoppage was tantamount to a recredit of the amount, which they had the right to make, according to business usages, on their own books at least, but this circumstance is of little significance in a legal sense.

The subsequent failure of the bank in no way affected the position which the defendants had taken, and the want of presentation in time did not change their situation or status, nor do them any injury. The fact that their trusted agent, the bank, afterward failed, is a misfortune which they must bear. They cannot compel the plaintiff to share it with them. The relation of debtor and creditor which existed between the defendants and their agent (the bank) enabled them to collect from it forty per cent. of their entire deposits. There was no legal mode in which the plaintiff could prevent the payment; it was not owner of any part of the fund, legally

or equitably; the bank owed it no duty, and it had no rights against the fund which the law would recognize. The fact that the payee requested the defendants to stop payment, in no way alters the legal effect of their act. The stoppage of payment revoked or canceled the checks as existing obligations for every purpose, except that of action on them, the checks being for that purpose evidences of debt only.

The lost checks have never been found, and will probably never come to light; and if found, could not be used unless reissued by the defendants, for that would give them the force of new checks. They require indorsement to make them negotiable in the hands of any person other than the plaintiff. If this circumstance does not make the tender of a bond of indemnity unnecessary (*Cow. Tr.* § 401), its tender at the trial was sufficient (3 *R. S.* 6 ed. 672, old § 76; Code, § 1917; *Cow. Tr.* § 400; Smith *v.* Rockwell, 2 *Hill*, 482; Frank *v.* Wessels, 64 *N. Y.* 155).

Upon the entire case, it follows that the plaintiff is entitled to judgment upon the special verdict for $252, which includes the proper allowance of interest.