subject of contributory negligence. The verdict of the jury being a general one, either or both of the issues of negligence of the defendant and the want of contributory negligence of the plaintiff must have been found in the defendant's favor. It appears in the record before us that the plaintiff had testified that, some 17 years before the accident occurred, he had suffered from serious illness in Germany for a period of about 7 years, during the greater part of which time he had been in a hospital, and confined to his bed. The defendant called as a witness a physician connected with a hospital in the city of New York to which the plaintiff resorted for treatment after the alleged accident referred to in the complaint. That physician was permitted to testify that he treated the plaintiff, who was suffering from a very rare disease, of so interesting a character that the plaintiff was exhibited before a society of physicians at a public meeting, and an account of the plaintiff's peculiar disease was published by the witness in the New York Medical Journal; and he swore that the account was published with the plaintiff's knowledge and approval. In the course of his examination this witness was asked the following question:

"Q. Now, then, prior to the preparation of the article published by you in the Medical Journal of February 1, 1896, did this plaintiff tell you that 17 years previously he had suffered pains in the legs, lasting day and night, which forced him to stay in bed for 7 years?"

That was objected to on the ground that it was privileged. The objection was overruled. This question was in no way related to the subject-matter of the action, so far as the issues upon which the question of the liability of the defendant depended. Assuming that all communications made by the plaintiff to this physician were privileged, and he was improperly allowed to give this testimony, it still remains that it has been found by the jury that the defendant is not responsible for any injuries sustained by the plaintiff in this action, and we are concluded by that finding. If there is no liability of the defendant, the question sought to be raised on this record is a moot one. It is said that the testimony affected the credibility of the plaintiff, but that is pure assumption, for what the plaintiff testified to with respect to the main issues does not appear. On the finding of the jury, there was no negligence of the defendant's servants, and therefore there could have been no recovery.

The judgment appealed from should be affirmed, with costs.

---

(70 App. Div. 588.)

SHOE LASTING MACH. CO. v. WESTERN NAT. BANK OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. April 11, 1902.)

1. BANKS—DEPOSITS—PAYMENT OF CHECKS—SIGNATURE CARDS.

Where the treasurer of a foreign corporation opened a bank account with defendant, and at the same time handed it authorized signature cards to guide it in the payment of checks drawn thereon, which cards contained the signatures of both the president and the treasurer, defendant was not authorized to pay checks signed by the treasurer alone, and was liable to the corporation for the sums so paid.

**2. Same.**

Where the secretary-treasurer of a foreign corporation opened a bank account with defendant, handing it authorized signature cards to guide it in paying checks drawn thereon, which cards contained only his signature, the corporation could not hold defendant liable for the amount of checks so paid on the ground that they should also have contained the signature of the president.

Appeal from trial term, New York county.

Action by the Shoe Lasting Machine Company against the Western National Bank of the City of New York to recover balances claimed to be due on deposit accounts. From a judgment entered on a verdict in favor of defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Justus P. Sheffield, for appellant.
John Quinn, for respondent.

PATTERSON, J. This appeal is from a judgment entered upon a verdict in favor of the defendant and from an order denying a motion for a new trial. The action was brought to recover balances of money which the plaintiff claimed to be due it upon two deposit accounts it had with the defendant, one called the "general account" and the other the "dividend account." The plaintiff was a corporation of the state of Massachusetts, but it had its main office or agency in the city of New York, in charge of one Blackwell, who was the secretary and treasurer of the corporation, and is also referred to in the evidence as being practically a local manager. Blackwell opened the bank accounts for the plaintiff with the defendant, and it fully appears that the officers of the corporation in Massachusetts were cognizant of the opening of such accounts; and, if original authority was not conferred upon Blackwell to open them, his acts in so doing were fully ratified by continuous dealings through those accounts with the defendant which were known to and acquiesced in by the plaintiff. In answer to the causes of action stated in the complaint the defendant set up, in substance, the defense of payment. On the trial, the affirmative of the issue being with the defendant, it sought to establish its contention by evidence of the disbursement of moneys upon checks, which it claims were properly signed to authorize it to charge against the accounts of the plaintiff all the moneys withdrawn from the bank on such checks. It is admitted by the plaintiff that on the general account all moneys were withdrawn on proper and sufficient checks, except the sum of $500.85. Those checks which the plaintiff recognizes and admits to have been properly drawn on the general account bore the name of the plaintiff corporation and the signatures of "T. Mayo Blackwell, Treas.," and "Walter Shaw, Prest." The checks drawn upon the general account, and repudiated by the plaintiff, were subscribed in its name, but bore only the signature of "T. Mayo Blackwell, Treas." The checks disclaimed by the plaintiff and paid by the defendant out of the dividend account were sub-

scribed in the name of the plaintiff, but bore only the signature of "T. Mayo Blackwell, Secty. & Treas." When Blackwell opened the accounts with the defendant, he left with it two signature cards. It is admitted that those cards were intended to guide the bank in its payment of checks drawn upon the plaintiff's two accounts, but the plaintiff contends that checks drawn upon those accounts should have borne the signatures of two officers, while the defendant insists that the signature of either of the two officers would suffice upon checks drawn on the general account and of Blackwell alone on the dividend account. When the two accounts were opened by Blackwell, if he had original authority to open them, that authority embraced the right to do everything that was necessary to the constitution of an active bank account, and included furnishing the bank with examples of the signatures upon which checks upon those accounts should be honored. If he did not have original authority to open the accounts, but his acts in so doing were ratified by the plaintiff, then that ratification also extended to such acts as he performed and were necessary to the constitution of a current bank account or accounts. Of the two signature cards, that applicable to the general account reads as follows:

"Authorized Signatures of

"Dec. 10th, 1897.

"The Shoe Lasting Machine Co.
"T. Mayo Blackwell, Treas.

"General Account.
"Walter Shaw, Prest.
"Address: 123 Liberty St., N. Y.
"Business: Shoe Machinery.
"Introduced by U. S. Nat. Bank.
"For the Western National Bank, New York."

There is some conflict of testimony as to this card, in its completed shape, having been left by Blackwell with the Western National Bank at the time the account was opened. Mr. Shaw, the president of the company, says that it was sent to him signed by Blackwell, and that then he added his signature, and forwarded the card by mail to the defendant. But it is immaterial how it reached the bank. The signature card for the dividend account is in the following words:

"Authorized Signatures of

"——————, 189–.

"The Shoe Lasting Machine Co.
"Dividend Account:
"T. Mayo Blackwell,
"Secty. & Treas.
"Address: 123 Liberty St., N. Y.
"Business: Shoe Machinery.
"Introduced by U. S. Nat. Bank.
"For the Western National Bank, New York."

The object for which these signature cards were left with the bank being as above stated, the interpretation to be given to them as indicating the duty of the bank in the payment of checks is a subject for determination by the court; and it seems to be obvious that on the general account one set of signatures was required,

while on the dividend account another and distinct signature was necessary. Checks on both accounts were to be drawn in the name of the plaintiff, but on the general account two signatures were required, namely, that of the president and that of Blackwell as treasurer. That the differences in signatures were material is emphasized by the fact that on the dividend account Blackwell's signature was to be in an entirely different form, and was to be made in a different capacity, from that in which checks were to be drawn on the general account. On checks drawn on the general account he was to sign as treasurer alone; on checks drawn on the dividend account he was to sign both as treasurer and secretary. Obviously, checks drawn on the general account were to be signed by two officers; checks on the dividend account by one. We can find nothing on the signature card relating to the general account which can be construed as authorizing the bank to pay checks on one of two signatures; and, on the other hand, nothing on the signature card relating to the dividend account which can be construed as authorizing the plaintiff to insist that two signatures were required to checks drawn upon that account. Consequently, we are of the opinion that the bank had no authority to pay moneys out of the general account upon the signature of Blackwell, treasurer, alone, and that the defendant is not protected in making payment of the $500.85 upon insufficiently signed checks, and that the plaintiff was entitled to recover that amount; and, further, that the bank was authorized to make payment on checks on the dividend account signed by Blackwell, secretary and treasurer, alone. No such course of dealing was established between the parties as would have compelled the defendant to reject checks on that dividend account signed in the manner last indicated. The question as to the general account is sufficiently raised by the exception to the refusal of the court to charge the eighth request of the plaintiff.

It follows that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.