K. & K. Silk Trimming Co., Inc., Appellant, v. Garfield National Bank of the City of New York, Sued as Garfield National Bank, Respondent.

Supreme Court, Appellate Term, First Department, April 12, 1926.

Banks and banking — liability of bank to depositor — action by plaintiff to recover amount of note made payable at defendant bank — note was executed before change in management of plaintiff corporation — subsequent to change resolution was passed directing bank to pay notes and checks signed by new secretary and treasurer — note in question was presented by holder and paid by bank — if bank was orally instructed not to pay notes signed by old officers it would be liable — question of law for court to determine whether resolution of corporation substituting new secretary and treasurer operated as revocation of bank's authority to pay notes signed by old treasurer — error to leave question to jury — said resolution as matter of law did not constitute revocation — error to admit evidence that two notes held by bank executed by old officers were paid — not necessary for plaintiff to plead and prove demand — bank was not purchaser of note and did not become subrogated to rights of holder.

In an action by a corporation to recover the amount of a note made by it payable at the defendant bank, in which it was claimed that after the corporation changed hands and new officers were elected, the defendant was orally instructed not to pay notes signed by the old officers, the plaintiff may recover if it is established that the bank was instructed orally not to pay a note signed by an officer who was such prior to the reorganization of the corporation.

It was error for the court to submit to the jury the question of whether or not a resolution passed by the corporation after the reorganization, which designated the new secretary and treasurer as the persons to sign notes and checks, constituted a revocation of the authority of the bank to pay a note signed by an officer prior to the reorganization, for the effect of the second resolution was a matter of law for the determination of the court. As a matter of law, the second resolution did not have the effect of revoking the authority of the bank to pay a note of the corporation legally executed prior to the reorganization.

Inasmuch as it is impossible to determine whether or not the jury found that the alleged oral instructions were given or found that the second resolution revoked the authority of the bank, it was proper for the trial court to set aside a general verdict in favor of the plaintiff.

It was error to admit evidence of the payment of two notes of the corporation made while the old officers were in control which were discounted and held by the bank at the date of maturity, for the bank was entitled to have those notes paid and the evidence has no bearing on the issue in this case, which is the authority of the bank to pay a note presented to it by the payee.

Since the complaint alleges and the answer admits that the defendant bank paid the note in question and charged the payment against the account of the plaintiff, it is not necessary for the plaintiff to allege and prove a demand for payment to it of the sum so charged against it. However, if there is any doubt on this point, the complaint may be amended before the new trial.

The defendant cannot be regarded as a purchaser of the note, since it was presented to it on the due date and payment was made, not for the purpose of

**28** K. & K. Silk Trimming Co., Inc., *v.* Garfield Nat. Bank.

Appellate Term, First Department, April, 1926. [Vol. 127

purchasing the instrument, but for the purpose of discharging it, and furthermore, it cannot be held that the bank has become subrogated to the rights of the holder of the note against the plaintiff for if the act of the bank in charging the note against the account of the plaintiff was wrong, it cannot invoke an equitable fiction to enable it to accomplish the same end.

Levy, J., dissents, with opinion.

Appeal by plaintiff from an order of the City Court of the City of New York, setting aside a verdict in favor of plaintiff and directing a new trial.

*Bennett E. Siegelstein,* for the appellant.

*Edwards, O'Loughlin & George [Charles H. Edwards* and *David G. George* of counsel], for the respondent.

Churchill, J. On September 10, 1924, the plaintiff corporation, by its then president and secretary, made its promissory note to the order of Monarch Textile Mills, payable on December 20, 1924, at the defendant bank, where plaintiff had an account. At that time the president, Kramer, was authorized to sign notes and checks on behalf of the corporation and a copy of the resolution conferring such authority had been filed with the bank. On October 7, 1924, the then stockholders sold their interest in the corporation to Joseph Gold and David Gold. The former was then elected secretary and treasurer and a resolution was adopted authorizing him to sign notes and checks for the corporation. A copy of the resolution was given to the bank on October 7, 1924. Its material parts were as follows:

" *Resolved,* that the funds of this corporation be deposited with the Garfield National Bank, and that the same be withdrawn therefrom upon the signature of Joseph Gold, as Secretary and Treasurer, which signature is hereto attached, and it is

" Further *resolved* that * * * the Garfield National Bank be authorized to pay all checks and notes signed or indorsed in the manner above set forth * * *."

Plaintiff's witness, Joseph Gold, testified that at the time when the resolution of October seventh was given to the bank he and the former president, Kramer, had an interview with Mr. Milne, one of the officers of the bank, at which they told Milne that any note or check which might thereafter be presented should not be paid unless signed by the new officers and that " if any checks or notes will come in with the old signatures they should not be honored, because we are the new people and we bought out the business."

Mr. Milne denied that there had been any such conversation. No other witness was called.

On December 20, 1924, the note of September tenth was presented to the bank by the holder and was paid. It is admitted that the payment was charged to plaintiff's account. Plaintiff sues to recover the amount of this payment. Defendant denies that payment of the note was ever ordered to be stopped. It also counterclaims on the theory that even if the note was paid after instructions not to pay it had been given, it is entitled to offset the amount of the note either as a holder of the instrument or on the theory of subrogation to the rights of the payee.

The case was submitted to the jury which found for the plaintiff. The trial court set the verdict aside and ordered a new trial on the ground that the verdict was contrary to law and on the exceptions taken on the trial. He was of the opinion that no cause of action had been pleaded or proved, because, even if the payment of the note was unauthorized, plaintiff showed no injury. (*Maresco* v. *Mechanics & Metals Nat. Bank*, 122 Misc. 667.) He also was of the opinion that " the issues involved in the counterclaim " should have been submitted to the jury; but, as the counterclaim only sought an offset against any sum that might be awarded to the plaintiff, there was nothing to submit to the jury if the plaintiff failed to make out a case.

I think the verdict was properly set aside but not for the reasons given in the opinion below. I think exceptions taken to the charge and to the admission of certain evidence were well taken and justify the order appealed from.

As I view it, the single question on which the case turned was whether or not, at the time the resolution of October seventh was given to the bank, oral instructions to stop payment of notes and checks theretofore made were also given. If they were, the bank could not justify its payment of the note here in question. Nor could it found a counterclaim upon its own wrongdoing in making such payment in violation of the orders of its depositor. (*American Defense Society, Inc.*, v. *Sherman Nat. Bank*, 225 N. Y. 506.) On the other hand, if such oral instructions were not given, the bank had a perfect defense and had no occasion to plead any counterclaim. The note was properly signed at the time it was made and the resolution of October seventh could not properly be construed to affect notes or checks theretofore executed.

But the court charged the jury as follows, the first resolution referred to being the resolution which authorized the then president, Kramer, to sign notes and checks and the second resolution being that of October 7, 1924, both hereinbefore referred to:

" If the bank concluded that the first resolution was still in effect, then it will be for you gentlemen of the jury to say, upon

a reading of both of these resolutions, whether in your judgment the second resolution wipes out the first one; whether it specifically or impliedly deprives the bank of the right of honoring the first resolution, which does give to the bank the right to honor the signature of Mr. Kramer.

" If your judgment, upon a reading of the two resolutions which are before you, is that the second resolution does wipe out and takes away from the bank that original authority that it had received from the plaintiff to honor the signature of Mr. Kramer, then the defendant paid that note at its peril, provided you feel that the second resolution, when Gold came in, supersedes the first one and clearly directs the bank to honor no signature other than that of Mr. Gold."

An exception was taken to this part of the charge, counsel urging that the construction of the resolutions was a matter for the court and not for the jury, and requesting the court to charge that the resolution of October seventh was prospective only in its effect. The court declined to charge as requested and, in effect, repeated his previous charge leaving it to the jury to give such effect as they thought proper to the resolutions. This was manifest error and the charge requested by defendant should have been given. Exception was again duly taken. In view of the charge and the refusal to charge it is impossible to know whether the jury found that oral instructions to stop payment had been given or whether they construed the resolution of October seventh to relate to notes and checks theretofore, as well as thereafter, made. As matter of law, the resolution was not susceptible of such a construction and the verdict cannot be permitted to stand.

I think there was further error in admitting evidence of the payment of two notes of the corporation made while the old officers were in control and discounted and held by the bank. The bank was entitled to have these notes paid, or to offset them against its depositor's account, notwithstanding any change of officers or any directions to stop payment of notes or checks which might be presented by third persons. Proof of the taking up of these notes by checks signed by the new treasurer had no proper bearing on the only issue in the case but was calculated to mislead the jury on that issue.

If the trial judge was right in his view that no cause of action was pleaded or proved, the defendant was entitled to a dismissal of the complaint. But a new trial has been granted on defendant's motion and the question may again arise on the new trial. If so, I am inclined to the view that since, as the complaint alleges and the answer admits, the payment of the note was charged by the

bank against plaintiff's account there was no necessity of pleading or proving a demand by plaintiff for payment to it of the sum so charged against it.   The bank had taken the position that the payment had been properly made to the holder of the note and by its answer had affirmed that position.   Manifestly, a demand for repayment to plaintiff would have been idle.   But if there is doubt on this point it may, perhaps, be obviated by amendment of the complaint before retrial of the case and by further proof on that trial.

In the opinion of Mr. Justice Bijur it is said that the bank is either to be regarded as a purchaser of the note or should be held to have become subrogated to the rights of the holder against the maker.   But there was no negotiation of the note to the bank. The holder presented it for payment.   When it surrendered it to the bank it had no idea that it was thereby effecting a negotiation of the instrument, with the liabilities consequent upon such a transfer.   The bank assumed to pay the note at maturity and not to purchase it before maturity.   By its action the note was discharged and extinguished at law (Neg. Inst. Law, §§ 148, 200; *Egerton* v. *Fulton Nat. Bank*, 43 How. Pr. 216; *Burr* v. *Smith*, 21 Barb. 262) and the payment so made was charged by the bank against its depositor.

It is true that, in equity, an obligation, though discharged, may be considered as revived for the purpose of accomplishing justice by way of subrogation.   (*Pittsburgh-Westmoreland Coal Co.* v. *Kerr*, 220 N. Y. 137.)   But the party invoking that principle must himself be free from fault.   (Id.)   In the present case it seems to me impossible to say that if the bank was so far wrong in its conduct that it could not charge the payment of the note against the account of its depositor, it could nevertheless invoke an equitable fiction to enable it to accomplish the same end.

The order should be affirmed, with costs.

Bijur, J. (concurring).   I concur for affirmance at least on the ground that defendant's counterclaim should have been submitted to the jury.   Assuming that the defendant bank, contrary to plaintiff's instructions, had " paid " one of plaintiff's notes, the transaction resulted either in a purchase by the bank from the holder of the note (*Riverside Bank* v. *First National Bank*, 74 Fed. 276) or the bank became subrogated to the rights of the former holder against the plaintiff as evidenced by the note. (*Pittsburgh-Westmoreland Coal Co.* v. *Kerr*, 220 N. Y. 137.)

As I read it, there is nothing in *American Defense Society* v. *Sherman Nat. Bank* (225 N. Y. 506) to the contrary.   In that case

**32** K. & K. Silk Trimming Co., Inc., *v.* Garfield Nat. Bank.

Appellate Term, First Department, April, 1926. [Vol. 127

the bank neither pleaded nor suggested a counterclaim, nor does the opinion mention any such contention. The distinction between a defense to the claim of the depositor for the full amount of his deposit and a counterclaim on the instrument acquired by the bank is referred to in *Schneider* v. *Irving Bank* (1 Daly, 500, 502) in the case of a check, and in *Egerton* v. *Fulton Nat. Bank* (43 How. Pr. 216, 218) in the case of a note.

Some confusion is apt to occur by reason of the use of the term "payment" in connection with the transaction. Ordinarily an obligation cannot be "paid" in the sense of being discharged except by the debtor or his duly authorized agent. (Neg. Inst. Law, § 200, subd. 1.) It is quite natural, however, that the payee should not care about the legal effect of the payment made to him under the instrument itself, as he would have received his entire interest therein. As between debtor and payor, however, the relation is somewhat different.

In *Burr* v. *Smith* (21 Barb. 262) the question seems to have been whether the payor was the representative of the maker of the note or not and he was not produced as a witness at all by plaintiff, who had the burden of proof. The court decided merely that it would *under the facts of that case* regard the note as paid or discharged as against all parties. How far each transaction must be judged according to its own peculiar circumstances is illustrated in *Coykendall* v. *Constable* (99 N. Y. 309, 314 *et seq.*).

In the case before us, since the maker had forbidden the bank to pay the note, its acquisition thereof from the holder is not a discharge. (Neg. Inst. Law, § 200, subd. 1.) But in the language of the Court of Appeals in the *Coykendall Case* (*supra*) the title to the note must be in someone. It is evidently not in the former payee who has parted with the instrument on receipt of the full amount due thereunder. I see no reason in law or equity why the defendant bank is not the owner, entitled to counterclaim the amount thereof, subject, of course, to any defenses thereto which the defendant may have.

Levy, J. (dissenting). I concur with Mr. Justice Churchill as to the failure of the defendant to set up or prove a proper counterclaim which could be offset against plaintiff's claim on the promissory note which was honored by the former in violation of instructions, and I am pleased to note that my brother adopted the reasoning advanced in my original memorandum wherein I urged the *American Defense Society* case. But I cannot accept his conclusion that the charge by the court below and the admission of certain evidence constituted error.

The resolution of October 7, 1924, was notice to the defendant bank that the funds of the plaintiff were to be withdrawn only upon the signature of Joseph Gold as secretary and treasurer. This notice in so far as checks were concerned, undoubtedly bound the bank not to pay any which were presented, except such as were properly signed by the officers designated to the bank as authorized to sign the same. (*Shoe Lasting Machine Co.* v. *Western Nat. Bank,* 70 App. Div. 588.) The instrument in suit was a note executed by the former officers of the plaintiff and made payable at the defendant bank. Such a note is in effect like a check, an order or draft on the banker in favor of the holder for the amount, and like a check too, may be countermanded or payment thereon ordered stopped. (*Ætna National Bank* v. *Fourth National Bank,* 46 N. Y. 82.)

Specific notice countermanding this very note was unnecessary, because the bank had knowledge of the change of officers of the plaintiff, and in paying the note it did so at its peril. It is perfectly true that no such notice could affect the right of the bank to repay to itself out of the funds of the depositor the value of any note which it had discounted, and for the amount of which the depositor was indebted. But the note in suit was not of this character, it being evidence of the claim of a third party.

Upon the record, as I read it, there was really nothing to present to the jury and I consider that the direction of a verdict in plaintiff's favor would have been entirely proper. I, therefore, dissent and vote to reverse the order and to reinstate the verdict of the jury.